## DUPREE vs. PERRY.

1. A writ of error can only be sued out by one who is a party or privy to the record, and who has been injured by the judgment and will be benefitted by its reversal.

2. When an Orphans' Court in this State, in the rightful exercise of its jurisdiction, has appointed a guardian for the person and estate of a minor, no one else can be recognized as the lawful guardian, whilst such appointment remains unrevoked.

3. In such case, the removal of the guardian or ward to another State does not divest the jurisdiction, or confer authority upon its courts to appoint a guardian, who can supersede the guardian appointed here.

4. In determining whether the guardianship of a minor shall be transfered from this to another State, the Orphans' Court must necessarily exercise a sound discretion, and if the order is refused, the letters of guardianship, granted by the court of the State into which the transfer is proposed to be made, should be treated as a nullity, and as confering no right on the person to whom they have issued.

5. The design of the settlement, which the statute requires to be made before an order can be granted for the transfer of a guardianship from this to another State, is to furnish the court, into which it is proposed to be removed, with record evidence of the condition of the estate and of the property of the ward, so that such court may

be able to see by an inspection of the record with what the guardian appointed by it, is justly chargeable. A settlement that fails to show this is insufficient to authorise the transfer.

6. To authorise the transfer of the guardianship of a minor, under the statute, from this State to another, both the guardian and ward must reside in the State to which it is proposed to remove it.

ERROR to the Orphans' Court of Pickens.

R. H. SMITH, for the plaintiff.

ORMOND, for the defendant.

CHILTON, J.—The case made by the record is this: Joseph E. Dupree died in the county of Pickens, leaving a widow and three children; the widow afterwards married Perry, the defendant in error, who was thereupon appointed by the Orphans' Court of Pickens the guardian of the persons and estates of two of the orphan children, to-wit, Arabella and Thomas J. Dupree, (the other child having died in its infancy)—and entered upon the duties of guardian as the statute requires; afterwards the widow died and the said guardian removed to the State of Texas, taking with him Thomas, one of his wards, but leaving Arabella at her grandmother's, in Noxubee county, in the State of Mississippi; Perry, after his removal to Texas, took out letters of guardianship in that State upon the persons and property of his two wards, and on the 8th of August 1849, having so obtained letters, moved the Orphans' Court of Pickens county for an order, allowing him to remove the guardianship of said estate of Arabella and Thomas J. Dupree to Texas—which order was granted. It appears by the entry that one James Henry resisted this motion, but it is not shown by any of the proceedings how he came into the case. It further appears that on the 8th day of May 1849, Thomas D. Dupree, styled in the record " the guardian ad litem of Arabella, her next friend and uncle," obtained letters of guardianship on her person and estate from the Probate Court of Noxubee county, Mississippi; and that on the 26th July 1849, Perry filed his account current and vouchers in the Orphans' Court of Pickens for a final settlement of said guardianship, whereupon the judge appointed the second Monday in September then next for said final settlement, and

ordered publication to be made accordingly. Immediately following this entry is one for the removal of the property of the ward to Texas, made the 8th August 1849, in vacation. Then follows, without date, an entry, purporting to be a final settlement of the guardianship of Perry with both his wards, and the court determines that the said Perry as guardian has in his hands, belonging to his ward, Arabella, the sum of one thousand two hundred and ninety-five $\frac{80}{100}$ dollars. The entry then proceeds, "It is therefore ordered and decreed by the court, that Arabella Dupree, minor heir of Joseph E. Dupree, deceased, recover by her guardian *ad litem*, Thomas D. Dupree, of Jesse M. Perry, late guardian of said minor, the sum of $1295 $\frac{80}{100}$." It does not appear any where by the record that Perry has been removed, or resigned his guardianship, but he still appears to be the guardian in Pickens county; for even conceding the order for the removal of the property to be valid, a portion of the estate, as is shown by the return of said guardian, consists of immovable estate, land, as to which the order is nugatory. On the 21st Aug. 1849, Thomas D. Dupree, "as the next friend" of Arabella Dupree, exhibited his petition in the Orphans' Court of Pickens, in which is set forth the several appointments to the guardianship, as above stated, praying that said Perry be required to make a final settlement of his guardianship; that the order made the 8th Aug. 1849, may be revoked; that he, Thomas D. Dupree, may, by virtue of his letters, remove the guardianship of said Arabella's estate to Noxubee county, in the State of Mississippi; that he may be appointed guardian *ad litem* to the final settlement to be made; and that an order may be passed (if necessary) to make him a party to the proceedings had on the 8th Aug. 1849, so as to sue out a writ of error against said proceedings, &c. This petition was demurred to by the counsel of Perry. Upon the hearing of the petition, as appears by an entry which bears no date, the court refused to reverse, re-examine or set aside the entry made the 8th August, or to revoke Perry's letters of guardianship; but allowed the petitioner to become guardian *ad litem* to the proceedings of final settlement, and also to be made a party, so as to sue out a writ of error upon the order made for the removal of the ward's property to Texas. It appears by the record, that Perry still remains the guardian of the

infant, Arabella, no order appearing for his removal. The writ of error proposes to bring up for our revision, not only the order of removal, but the final decree, and errors are likewise assigned upon the action of the court on the petition.

These being the facts of the case, let us inquire what right Thomas D. Dupree has to contest the regularity of the proceedings had in the Orphans' Court; for if he be a mere stranger, he cannot maintain this writ of error. It is well settled that a writ of error can only be prosecuted by one who is a party or privy to the record, and who has been injured by the judgment and will be benefitted by its reversal.—Hill's Heirs v. Hill's Ex'rs, 6 Ala. 166, and cases cited.

Thomas D. Dupree insisted in his petition that he was the guardian of this infant, and therefore was entitled to contest; but this cannot be. The Orphans' Court of Pickens had, at the time Perry was appointed, full jurisdiction, both as to the person and property of the ward, and having rightfully obtained jurisdiction and exercised it in the appointment of a guardian, until his letters were revoked, no one else could be regarded as the rightful guardian. The removal of the guardian to Texas, or of the ward to Mississippi, did not take away that jurisdiction and enable the courts of these States to appoint guardians, who could supersede the one appointed here. In Dorman v. Ogbourne, 16 Ala. 750, we had occasion to examine the question, how far the rights of a guardian properly appointed by an Orphans' Court, having rightful jurisdiction in one county, is affected by the subsequent appointment in another county, the first appointment remaining unrevoked, and we then held, as the result of our legislation, "that if a particular Orphans' Court, having jurisdiction of an orphan and of his estate, appoints a guardian of them both, that court has the exclusive jurisdiction afterwards, and there is no authority for another Orphans' Court, either to remove such guardian, or to supersede him by a new appointment." Now it would seem to follow, that if the removal of the ward, or the transfer of his estate from one county to another in the State, did not confer upon the judge of the Orphans' Court of the county in which both might be, the right to issue letters, &c., that, for greater reason, their removal out of the State would not do so. It is true the statute confers on the Orphans' Courts, in certain cases, the power of ordering

the guardianship of orphans to be transfered from one county to another in the State, and from this State to another; but we apprehend that, as respects the transfer from this State to another, the Orphans' Court must, under the statute, necessarily exercise a sound discretion, in determining whether it shall be done. The language of the act is, "And the court shall and may reject the application, and refuse such order, whenever it is satisfied it is not for the benefit of the heir &c., that such removal shall take place," and we are not prepared to say that the court did wrong in refusing the application of T. D. Dupree to remove the property to Mississippi. What then is the effect of the appointment of Dupree as guardian by the Mississippi Court of Probate, since the judge of the Orphans' Court of Pickens refuses to consider him as entitled to the property in virtue of it, under the statute, and to make an order of removal? It is certain there cannot be two guardians deriving their powers under distinct appointments, and operating upon the person and property of the ward, in the same jurisdiction, at the same time. This would be to deliver the estates of orphans over to the greatest confusion, and to waste them by scrambles for the property by the conflicting interest of contending guardians. Our opinion is, so far as the action of the Orphans' Court of Pickens is concerned, that after refusing the order of removal of the property to Mississippi, the grant of letters of guardianship by the Probate Court of the county of Noxubee may be treated as null and void, and as confering no right on the plaintiff in error, Thomas D. Dupree. Perry is the guardian in that court, and until his authority as such is revoked in some way known to the statute law of this State, the court is bound to respect his rights, and to permit him to retain the property so long as it devolves on him the fiduciary relation of guardian. As then Thomas D. Dupree occupies none other than the relation of a stranger to the record in this case; so far as any supposed right of his may have been violated, he has no right to intervene between the rightful guardian and the ward, and to say the latter has been injured. Suppose the order of removal of the property to Texas is irregular, (and we are inclined to think it is wanting in several particulars to make it conform to the statute, if the record before us is all that is shown by the records of the Orphans' Court concerning it,) what inte-

rest has 'I. D. Dupree in litigating that matter? He had nothing whatever to do with it; is no party or privy to the proceedings; and if he be not a guardian, whose authority over the estate can be looked to, he has no interest to propound, and the order of the court, allowing him to sue out a writ of error, is no more than if the court had given the permission to a stranger. So that we cannot look to this order as confering any right upon Dupree to become a party, so as to review the order of removal.

But he was appointed the guardian *ad litem* of the infant ward to protect her rights upon the final settlement, and as such, it became his duty, if a decree had been pronounced prejudicial to her, to see to its correction. We think, under our statute, allowing amendments of writs of error, we may consider the decree of final settlement properly before us for revision.

The act of 1837, under which this settlement was had, (Clay's Dig. 270, § 17,) provides, "That letters of guardianship, that have heretofore, or may be hereafter granted by any court of this State, having jurisdiction of the person and estate, or of the estate only, of any infant under the age of twenty-one years, and the guardian, to whom letters of guardianship have or may be granted, shall desire to remove the personal property and estate of such infant to another State, it shall be lawful for him to do so, *upon first making a full and final settlement of his guardianship with the proper court of this State, in the manner now prescribed by law.*" The act then provides for the production and recording of the evidence of the appointment of such guardian in another State; the proof of the sufficiency of the security given, and also proof that the guardian, *as well as the ward,* are inhabitants of the State to which it is proposed to remove the property. The object of the statute in requiring a full settlement to be made, prior to the order of removal, was to furnish the ward with record evidence against his guardian of the amount of the estate which came to his hands, and for which he would be chargeable in the court to which the guardianship may, by the order, be moved, upon the production of the record of the Orphans' Court of this State. The record here should be such as to exhibit the true condition and situation of the estate, the property to which the ward is entitled, and the amount for which

the guardian is justly chargeable.   The court, to which the property is removed, should be enabled by the production of the record from this State to see, by inspecting it, what sum and for what property the guardian should be held accountable. Such is not the condition of this record.   There appears to be no inventory, and although the account current speaks of certain sums being for rent of land and hire of slaves, it is not shown what land or how many slaves belong to the ward, or whether either land or slaves were at the time of the settlement in the possession of the guardian.   The estate of the ward, upon a view of the whole case, is left in a very singular condition. In the first place, as we have said, there is still a subsisting guardianship in the county of Pickens—no. order of revocation of the letters, or for displacing the guardian, appearing; the ward herself is in Mississippi, and the court there, having jurisdiction of her person, has appointed a guardian; and the original guardian, both of her person and estate, has obtained letters in Texas, to which State he has removed.   In the controversy between these two guardians, the court in Pickens has decreed that the property of the ward which is in the hands of Perry, the Texas guardian, may be removed by him to his place of residence in Texas, while the *money* due from him to his ward shall be recovered by her, by her guardian *ad litem*, who is also the guardian appointed by the Mississippi court. This is clearly wrong.   The property should be kept together. If, in the opinion of the court, it would be for the benefit of the ward to have her estate removed to Mississippi, an order should be made discharging the present guardian, Perry, and, after ascertaining the amount of such estate, directing it to be delivered over to the Mississippi guardian, on his complying with the requisites of the statute.—Clay's Dig. 271, §§ 20, 21.   It is very clear that the appointment of Perry by the court of Texas, guardian of Arabella, that court having no jurisdiction over either her person or estate, is void, and ought not to be regarded by the Orphans' Court of Pickens as confering any authority upon him, under the act of 1837, (Dig. 270, § 17,) to remove the property there.   The guardian and the ward must both be inhabitants of Texas, to authorise the court here properly to order the estate to be removed there.   The order for removal has passed, but it has not been executed, and the set-

tlement remains to be perfected. The estate is still under the power of the Orphans' Court of Pickens, and in the hands of a guardian amenable to that court. It is only *after* "a full and final settlement of his guardianship in this State with the proper court," that the order of removal can be made, and as we have seen the attempted settlement is erroneous and must be reversed, the order of removal, based upon it, also fails. We say this much, that the Orphans' Court of Pickens may not consider itself tied down by the previous order, so as to be powerless in the matter of husbanding this estate for the ward, and placing it in the hands of such guardian, as will best secure the faithful management of it for her benefit. There may be many circumstances connected with this case, which the record does not disclose, but as we must look alone to what it does show, we would observe, that the removal of Perry, the guardian, out of the jurisdiction of the court, furnishes good grounds for displacing him—(8 Ala. 781; 11 ib. 461)—that it should not be tolerated for a guardian to remove into a distant country, leaving his ward unprovided for, as the petition asserts, in this, and to take her property with him, thus separating her from it. The court should see to it, that her estate should be so situated, as that the proceeds thereof may be made available for her support and education, and make such order concerning its management, as will best secure her interest.

Let the decree of settlement, *as to Arabella Dupree*, be reversed, and the cause remanded, that the guardian may show cause why his letters should not be revoked, and the guardianship either committed to other hands, or the estate ordered to be delivered over to the guardian appointed in the State of Mississippi, where the ward resides, upon his complying with the statute, if the Orphans' Court of Pickens should think it most advantageous to the ward.