[S. F. No. 579.    Department Two.—September 25, 1897.]

## SOUTHERN PACIFIC COMPANY, Appellant, v. VON SCHMIDT DREDGE COMPANY et al., Respondents.

Contracts—Charter of Barges for Use of Dredge Company—Execution by President—Copartnership—Parol Evidence.—Where one of the members of a copartnership doing business under a corporate name having his surname in its title, chartered barges expressly for the use of the copartnership, and designated himself in the charter and in the signature thereof as president of such company, the evidences upon the face of the charter that it was designed to be the contract of the copartnership, if not sufficiently clear of themselves to prove it as matter of law, are, at least, sufficient to warrant parol evidence to show that the company was bound by the terms of the contract as principal.

Id.—Principal and Agent—Designation of Agency in Written Contract —Evidence—Distinction Abolished.—The distinction at common law between sealed and unsealed instruments, as to the effect of words

of agency appended to the name of a contracting party in the body
and signature of the contract, is abolished in this state, and the rule
as to simple contracts is applicable, that words of agency employed
in the written contract are to be regarded, not as descriptive merely,
but as importing character and capacity; and, where the reading of
the contract, however inartificially it may be drawn, discloses that
it is executed for or on behalf of a principal, or even leaves the mat-
ter in doubt, parol evidence may be used to determine whose contract
it is, and this even in cases where the instrument is sufficiently clear
in its terms to bind the agent personally.

Id.—Negligence of Bailee—Injury from Storms to Chartered Barges—
Prevention of Injury—Question of Fact—Nonsuit.—In an action for
injury to chartered barges, where one count of the complaint was
upon the terms of the charter covenanting to return the barges in
good condition, etc., and a second count charged defendant with
failing to exercise the ordinary care required of a bailee for hire, and
the plaintiffs' evidence showed that the barges were placed by the
defendant in shallow water, off a lee shore, and left exposed to the
fury of a southeastern storm of unprecedented severity, that the
barges were not designed to meet or withstand heavy weather, that
defendant knew this when receiving them, and that injury to the
barges might have been prevented by removing them to a sheltered
shore, it is a question of fact for the jury whether the defendant did
or did not exercise due care for the preservation of the barges, and
it is error to grant a nonsuit for want of proof of negligence.

APPEAL from a judgment of the Superior Court of the City
and County of San Francisco and from an order denying a new
trial.   J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

J. E. Foulds, and Fred B. Lake, for Appellant.

A. Van Duzer, for Respondents.

HENSHAW, J.—Plaintiff sued to recover damages for injur-
ies sustained by two of its barges while under charter to defend-
ant company.   Plaintiff is a corporation, defendant a copartner-
ship.

The complaint contained two counts, the first tendered issue
upon the violation of a covenant in a written contract, while the
second charged defendant with failing to exercise the ordinary
care required of a bailee for hire.   (Civ. Code, secs. 1928-30.)

It is undisputed that defendant took the barges upon Decem-
ber 20th, and returned them upon January 2d following.   Under
the first count defendant denies that it covenanted to return the

barges in good order, ordinary wear and tear only excepted. Under the second count it denies a failure to exercise ordinary care for the preservation of the leased property. It affirmatively alleges that injury to the barges was occasioned by an unusual and unprecedented storm, and resulted from the act of God or inevitable casualty.

At the conclusion of plaintiff's evidence a nonsuit was granted, and from the judgment entered plaintiff appeals.

Plaintiff, in support of its first count, offered in evidence the following contract, which was denied admission as not being the contract of the defendant dredge company:

"San Francisco, December 20, 1892.

"This agreement, made this day and date above mentioned, is such that Mr. A. W. Von Schmidt, president of the Von Schmidt Dredging Co. of this city, charters from the S. P. Co. their barges named *Nicolaus* and *Yuba City*, to be used at Baden, Cala., as pontoons to hold up the discharge pipes of the dredging company, and not for rough service, for a period of thirty days or longer, for the sum of ten dollars per day each barge. Barges to be accepted at and returned to foot of Market street, La Rue's wharf, San Francisco (unless otherwise agreed), in as good order as received, usual wear and tear only excepted.

"(Signed)                         J. D. CASE,

Agent S. P. Co.

"A. W. VON SCHMIDT,

"President Von Schmidt Dredge Co.

"H. T. Graves, Witness."

The appellant insists that this ruling was error; that upon the face of the agreement there was sufficient to show that it was the contract of the partnership, or at least sufficient to leave the question one of doubt, to be solved by parol proof. Respondent answers that the contract appears on its face to be the contract of A. W. Von Schmidt individually; that the appended words, "President of the Von Schmidt Dredge Co.," found in the body of the instrument and after his signature, are words of description merely, and that they no more make it the contract of the company than would a promissory note "signed C. F. Crocker, president of the S. P. R. R. Co., make it the note of the company." But respondent is unfortunate in his illustration, for

while this may not be sufficient to establish it as the note of the company, it would, under well-settled rules and abundant authorities, as we shall hereafter see, leave the question open to parol proof.   Equally unfortunate is he in the cases which he cites to support his contention.   They are those of *Echols v. Cheney*, 28 Cal. 157, *Morrison v. Bowman*, 29 Cal. 337, and *Haskell v. Cornish*, 13 Cal. 45.   For in the last case a promissory note reciting that "we, the undersigned trustees of the First A. M. E. church, in behalf of the whole board of trustees of said association, promise to pay," etc., and signed by two of the trustees individually, was held to be the note of the corporation, and not of the individuals.   And in the other cases this court was dealing with contracts under seal before the distinction had been abolished, and at a time when, therefore, all the extremely technical common-law rules governing the interpretation of specialties were in full force.   But these rules were never applied to simple contracts, even at common law, and with the abolition in this state of the distinction between sealed and unsealed instruments they likewise ceased to exist.

Thus the rule is well settled that where a reading of a simple contract, however inartificially it may be drawn, discloses that it is executed for or on behalf of a principal, or discloses an intent to bind such principal, or even leaves the matter one of doubt, parol evidence may be employed to determine whose contract it is, and this even in cases where the instrument is sufficiently clear in its terms to bind the agent.   This is not contradicting by parol the terms of a written instrument, for, as has been said, "It is no contradiction of a contract, which is silent as to the fact, to prove that a party is acting therein not on his own behalf, but for another.   'This does not deny,' said Parke, B., 'that it is binding on those whom, on the face of it, it purports to bind; but shows that it also binds another, by reason that the act of the agent, in signing the agreement in pursuance of his authority, is in law the act of the principal.'"   (Bishop on Contracts, sec. 1084.)

In consonance with this view it was at a very early day, and before the sealed contract was abolished in this state, that this court elaborately considered the meaning of the word "agent" appended to a signature upon a bill of exchange, and held that

in the case of a simple contract the word was not descriptive, but imported character and capacity. It further held that, if the capacity is thus shown upon the face of the instrument, resort may be had to parol evidence to elucidate further doubts or difficulties, in order to arrive at the true intent of the parties, and it is said: "It would seem clear from these cases that where the agent discloses the name of the principal, or that fact is otherwise known to the party receiving the bill at the time the same is made, then the agent is not responsible, though the name of the principal be not stated on the face of the paper, and only the name of the agent be signed, with the term 'agent' appended to it." (*Sayre v. Nichols,* 7 Cal. 535; 68 Am. Dec. 280.)

Later, in *Bean v. Pioneer Min. Co.,* 66 Cal. 451, 56 Am. Rep. 106, the principle was again reannounced with more fullness in an approved quotation from Abbott's Trial Evidence, and it is said: "If upon the face of the instrument there are indications suggestive of agency, such as the addition of words of office or agency to the signature, or the imprint of the corporate title on the paper—parol evidence is competent to show whom the parties intended should be bound or benefited. And even where the contract *bears no such suggestion* on its face, the rule as now generally received is, that parol evidence is competent, either in favor of or against the corporation (except, perhaps, when the instrument is a specialty); but that it is not competent for the purpose of exonerating the signer from personal liability, if the other party to the instrument chooses to hold him personally liable, unless there was evidence that the signer was duly authorized to contract for the corporation, and that credit was actually given to the corporation alone."

In *Burgess v. Fairbanks,* 83 Cal. 215, 17 Am. St. Rep. 230, the only evidence of agency apparent upon the face of the instrument was the signature, "William T. White, Agent for George E. White." This court said, following the principle as enunciated in the earlier cases: "It at least bears a strong suggestion of agency, and it would have been competent to show by parol evidence how it was received, and who was intended to be bound by it."

That the rule in California is not peculiar in this regard a consideration of a few of the many authorities bearing on the

matter will at once disclose. In *Higgins v. Senior*, 8 Mees. &
W. 833, the contract was made by the agent individually. Being
sued upon it, he was not allowed to discharge himself under the
plea of nonassumpsit by proving that the agreement was really
made by him as agent for a third person, and that plaintiff knew
those facts at the time when the agreement was made; but in
that connection, and discussing the liability of the principal in
such a case had he been sued, it is said: "There is no doubt that
where such an agreement is made, it is competent to show that
one or both of the contracting parties were agents for other per-
sons and acted as such agents in making the contract, so as to
give the benefit of the contract on the one hand to, and charge
with liability on the other, the unnamed principals."

In *Mechanics' Bank etc. v. Bank of Columbia*, 5 Wheat. 326, the
contract under consideration was in form of a check. It read:
"Mechanics' Bank of Alexandria, June 25, 1817. Cashier of the
Bank of Columbia; pay to the order of P. H. Minor $10,000.
William Paton, Jr." It was contended that this was a private
check not enforceable against the Mechanics' Bank, and it was
urgently insisted that, as under the act incorporating the bank
every such instrument was required to be signed by the presi-
dent and countersigned by the cashier, with the further proviso
that the funds of the corporation should not be liable for any
contract unless so executed, the bank could not be held under
this instrument. But the supreme court of the United States
held that the mere appearance of the corporate name on the face
of the paper led to the belief that it was a corporate and not an
individual transaction, and that when it was shown by parol evi-
dence that the drawer of the check was in fact the cashier, the
belief became the stronger, but that in any event "it is enough
for the purposes of the defendant to establish that there existed
on the face of the paper circumstances from which it might rea-
sonably infer that it was either one or the other. In that case
it became indispensable to resort to extrinsic evidence to remove
the doubt."

In *Salmon Falls Mfg. Co. v. Goddard*, 14 How. 446, the written
memorandum of contract bore upon its face no evidence that the
signer acted as agent. The supreme court of the United States,
considering the question, again said: "Extraneous evidence is

also admissible to show that a person whose name is affixed to the contract acted only as agent, thereby enabling the principal either to sue or to be sued in his own name, and this though it purported on its face to have been made by the agent himself, and the principal not named. (*Higgins v. Senior, supra; Trueman v. Loder,* 11 Ad. & E. 589.) Lord Denman observed in the latter case, 'that parol evidence is always necessary to show that the party sued is the party making the contract and bound by it. Whether he does so in his own name, or in that of another, or in a feigned name, and whether the contract be signed by his own hand (or that of an agent), are inquiries not different in their nature from the question, Who is the person who has just ordered goods in a shop? If he is sued for the price and his identity made out, the contract is not varied by appearing to have been made by him in a name not his own.' "

In *Nicoll v. Burke,* 78 N. Y. 580, the court of appeals thus declared the rule: "The principle is well settled that, if the agent possesses due authority to make a written contract not under seal, and he makes it in his own name, whether he describes himself as the agent or not, or whether the principal be known or unknown, his principal may be made liable, and will be entitled to sue thereon in all cases, and the instrument may be resorted to for the purpose of ascertaining the terms of the agreement."

In *Byington v. Simpson,* 134 Mass. 169, 45 Am. Rep. 314, the contract was entered into between the plaintiff and J. B. Simpson, and was signed "J. B. Simpson, agent." The supreme court held that the fact that plaintiff, when he entered into the contract in writing not under seal, and purporting on its face to be made by the defendant and signed "Simpson, agent," knew that Simpson was acting as agent for another, will not prevent him from holding the principal on the contract, and it is said: "The most that could be fairly argued, in any case, would be that under some circumstances proof that the other party knew of the agency, and yet accepted a writing which did not refer to it, and which in its natural sense bound the agent alone, might tend to show that the contract was not made with anyone but the party whose name was signed; that the agent did not sign as agent and was not understood to do so, but was himself the principal. But these are questions of fact, and as matter of law it

is obvious, and it is found, that the defendant was the principal, and that the contract was made with her. The objection that two persons cannot be bound by the same signature to a contract, if sound, would be equally fatal when the principal was not known. There is a double obligation, although there can be but one satisfaction. Our decision is in accordance with a thoroughly discussed English case which went to the exchequer chamber, and with the statement of the law by Mr. Justice Story there cited."

In *Deering v. Thom*, 29 Minn. 120, where the contract was made by one individually, and to his signature he appended the word "agent," it was held that he could relieve himself by proof that he acted for and intended to bind another for whom he was agent, and that when the contract was executed it was so understood and intended between him and the other party.

But in *Hypes v. Griffin*, 89 Ill. 134, 31 Am. Rep. 71, it was held, in accordance with the rule as expressed in the Massachusetts case, that the agent under such a contract could not relieve himself, but that the other party to the contract had his election to proceed if he chose against the principal, whether disclosed or undisclosed.

In *Traynham v. Jackson*, 15 Tex. 170, 65 Am. Dec. 152, the note in suit read: "Twelve months after date, we, the trustees of Chapel Hill College, promise to pay T. J. Jackson or order $300," and was signed by the individual names of eight men, without description or designation. The court held that while *prima facie* the defendants were personally liable, yet that they should be permitted to prove by parol evidence that they were agents of the corporation, and were acting as such within the limit of their authority, and that this was known to the plaintiff at the time of the contract, and that such proof would relieve them from responsibility on the contract, leaving to the holder of the note the right of recourse against the corporation.

In *Smith v. Alexander*, 31 Mo. 193, it was held where a written contract not under seal was executed in the name of an individual, and signed "J. H. Alexander, Treasurer Ohio & Mississippi R. R. Co.," that it was not indispensable, in order to bind the principal, that it should be executed in the name and as the act of the principal, but that it would be sufficient if,

upon the whole instrument, it could be gathered from the terms that the party describes himself and acts as agent and intends thereby to bind the principal; and, further, that the addition to the name signed to a contract, of the official character of the person so signed, is a suggestion and indication of representative character, and will justify resort to parol evidence to prove extrinsic circumstances by which the true liability of the principal and agent may be determined.

In *Use v. Shearer*, 2 Ala. 718, it is held to like effect that when it is doubtful from the face of a contract whether it was intended to operate as the personal engagement of the party signing it, or to impose an obligation upon some third person as his principal, parol evidence is admissible to show the true character of the transaction.

In *Haile v. Peirce*, 32 Md. 327, 3 Am. Rep. 139, it is declared that where the note was signed "C. T. H., President," and "J. N. H., Director," and "E. R. S., Secretary," that *prima facie* it was the promissory note of the individuals, but that the presumption of their individual liability may be rebutted, and that the note upon its face being ambiguous and uncertain, it is competent for either party to show by relevant extraneous proof who were the principals to be charged.

In *Kean v. Davis*, 21 N. J. L. 683, 47 Am. Dec. 182, it was held that a note signed "J. K., President of the E. & S. Co.," leaves it ambiguous on the face whether it was the note of J. K. individually, or of the company, and that in such cases parol proof can be resorted to to show what was the real intention of the parties.

In *Lacy v. Dubuque Lumber Co.*, 43 Iowa, 510, a note was in suit which ran, "Three months after date I promise to pay," and which was signed "M. H. Moore, P. D. L. Co." It was held that when such or similar initials or words are understood or are explained by parol evidence to indicate that the signer of the note is the president of defendant company, it will be concluded that the instrument then sufficiently shows on its face that it is the obligation of the company, and not of the individual.

In *Hardy v. Pilcher*, 57 Miss. 18, 34 Am. Rep. 432, where the bill was executed by the signature of B., followed by the words, "Agent of H.," the court declared that, while ordinarily no ex-

trinsic testimony of any kind is admissible to vary or explain such instruments, that an exception to the rule is "where anything on the face of the paper suggests a doubt as to the party bound, or the character in which any of the signers has acted in affixing his name, in which case testimony may be admitted between the original parties to show the true intent."

In *Richmond etc. R. R. Co. v. Snead,* 19 Gratt. 354, 100 Am. Dec. 670, one who was shown by parol evidence to be the president of the railroad company signed his name, without any addition thereto, to a due bill, acknowledging that there was due to defendants four hundred and eighty-four dollars in full for labor performed on the cottage lot of the railroad company. It was held to be uncertain on the face of the paper whether the contract showed that the labor was performed for the individual or for the company, and parol evidence was admissible to ascertain the fact and bind one or the other accordingly.

We think it unnecessary to pursue these citations further, though they might be indefinitely extended. It remains merely to apply this well-settled rule to the contract in question, and, so applying it, we entertain no doubt that it was competent for the plaintiff to show, if he could, the facts necessary to establish the obligation of the defendant company. The evidences upon the face of the contract that it was designed to be the contract of the company, if not sufficiently clear of themselves to justify a declaration that it is in law the contract of the company, at least are enough to leave the matter in doubt and warrant a resort to parol evidence for explanation. Thus the contract is not with A. W. Von Schmidt, but with A. W. Von Schmidt as president of the Von Schmidt Dredge Company. The barges are chartered to be used by and for the benefit of the dredge company, and Von Schmidt in signing signs as president of the dredge company. These *indicia,* it will be noted, are much plainer and stronger than were shown in many of the contracts where resort to parol evidence was permitted.

It follows, therefore, that the court erred in refusing admission to the contract in evidence and in excluding the offered evidence of plaintiff in respect thereto.

It is not necessary at this time to enter upon a consideration of the effect of this contract upon the liability of the defendant.

It is first subject to interpretation in this regard by the trial court, and only after such interpretation does it become properly a matter for review before us.

In granting the motion for a nonsuit upon the second count of the complaint, the court was of opinion that the evidence presented did not show negligence upon the part of the defendant while the barges were under its charge. In this also we think the court erred, and that the question of negligence under the proofs offered was properly a question for the jury. The barges were placed by defendant in shallow water, off a lee shore, and were left exposed to the fury of a southeastern storm of unprecedented length and severity. So much is admitted. Plaintiffs further proved that the barges were not designed to meet or withstand heavy weather, and that this was known to defendant when it took them. It offered evidence tending to prove that the injury to the barges (over which there is in the record no controversy) was occasioned not by their exposure for a brief time to the sudden fury of the gale, but resulted from their having been left day after day in their exposed position to thresh and pound and work in the heavy sea and wind. It was this long-continued "working" which wrecked them. Plaintiff further offered the evidence of experts—pilots and sea captains—to show that in the exercise of ordinary care and prudence, defendant should not so have allowed the barges to remain, but should have removed them to a sheltered shore near by and readily accessible.

Under such evidence it was clearly a question for the jury to say whether or not the defendant exercised due care for the preservation of the leased property.

The judgment is therefore reversed and the cause remanded.

McFarland, J., and Temple, J., concurred.