(79 N. W. Rep. 1018.)

---

## C. H. ANHEIER vs. ELMER L. SIGNOR.

Opinion filed July 10, 1899.

### Purchaser Pendente Lite—Intervention.

A party who purchases property from a defendant pendente lite may, with the permission of a court of equity and under section 5234, Rev. Codes, appear in the case at any stage of the procedings to defend his interests.

### Assignment to Bank Cashier—Rights of Bank.

A land contract was assigned to "C. C. Schuyler, Cashier," the assignor knowing at the time that Schuyler was the cashier of a certain bank, and being also at the time indebted to the bank. The bank claimed that such assignment was made as security for the payment of such indebtedness, and in a proper action sought to foreclose the assignor's interest thereunder. Whether or not such assignment raised a presumption that it was made to the bank not decided, but *held* that, if such a presumption did arise, it was a rebuttable presumption, and was fully rebutted in this case.

Appeal from District Court, Cass County; *Pollock,* J.

Action by C. H. Anheier, receiver of the Citizens' National Bank of Fargo, against Elmer L. Signor. Judgment for plaintiff. Defendant appeals.

Reversed.

*Pollock & Scott,* and *Newman, Spalding & Stambaugh,* for appellants.

*Benton, Lovell & Bradley,* for respondent.

BARTHOLOMEW, C. J.   We are first confronted in this case with a motion to dismiss this appeal.   The plaintiff, Anheier, as receiver of the Citizens' National Bank of Fargo, brought suit against the defendant, Elmer L. Signor, upon the latter's promissory note for $10,000 given to said bank, and asked to foreclose the interest of said Signor in a land contract in which he was named as purchaser, and which covered a certain section of land in Cass county.   The plaintiff claimed that said land contract had been assigned to said bank as security for the payment of the note.   That the contract had been assigned to "C. C. Schuyler, Cashier," was admitted, and it was also admitted that at the time of the assignment Schuyler was the cashier of said bank, to defendant's knowledge.   But it was the defendant's contention that the assignment was in fact made to Schuyler to secure an indebtedness owing by said defendant to said Schuyler, and that it never was given or intended to secure the indebtedness due the bank.   The trial court resolved this issue against defendant, and there was a judgment and decree accordingly, from which defendant duly perfected an appeal.   Now, however, respondent comes into this Court with a stipulation, signed by the parties of record, setting forth that the controversy had been settled, and consenting and asking that the appeal be dismissed. This is opposed by one G. Lee Clark, hitherto a stranger to the record.   He bases his opposition upon the fact that, pending the litigation, the defendant, Signor, by quitclaim deed, transferred to Clark all his interest in the land, and that the settlement was made with full knowledge upon the part of plaintiff that such deed had been given, and of all the purposes for which it was given.   Plaintiff, defendant, and Clark submit affidavits on the motion to dismiss. Certain things are undisputed.   The deed to Clark was given, and that fact was well known to plaintiff when the settlement was made. Defendant, Signor, and his mother were largely involved.   Everything that they had was incumbered, and actions were pending to foreclose these incumbrances, and they were in danger of losing their property.   About the time this action was commenced Clark became interested in their affairs,—voluntarily, they say; he says at their request.   It appears from the affidavits of all the parties that Clarke advised and counseled the Signors; that he virtually took charge of their litigation; that he looked up the testimony, employed the attorneys, advanced the funds necessary to meet the expenses of the litigation, or became responsible for such expenses; that he attended court at all times when the matters were being heard, and was active in promoting the interests of the Signors.   This action was commenced April 12, 1898.   The answer was served three days later, at which time an application for the appointment of a receiver was heard.   Clark was present opposing the appoint-

ment, and it was denied. On April 23, 1898, the deed to Clark was executed. From these facts it is clear that Clark is bound by the decree in this case. He purchased the property pendente lite, with full knowledge of all the facts. The terms of that settlement between the parties to the record are not disclosed, further than that it appears that plaintiff had assigned and transferred his interests under the decree, thus leaving the decree in full force.

It further appears, both by affidavit and by the statement of his counsel in this court, that plaintiff has no further interest in the litigation, except, possibly, to the extent of the costs in this court. Under these facts, can Clark be heard to oppose this motion? We think he can. We make our decision no broader than the facts. When the settlement was made, both parties had full knowledge of the deed, and of just what Clark was claiming thereunder. If Clark speaks the truth, there was a tempting opportunity to defraud him. True, plaintiff might not benefit by the fraud, but he could not avoid knowing that he was enabling Signor to perpetrate the fraud and profit thereby. If plaintiff had made the settlement in ignorance of Clark's rights, or if he were to be damaged by a reversal of the decree, the matter might not appeal so strongly to a court of equity. Our statute (Rev. Codes, § 5234) declares that, in case of the death or disability of a party, the Court may, upon motion, allow the action to be continued by or against his representatives or successors in interest, but, in case of any other transfer of interest, the action shall be continued in the name of the original party, or the Court may allow the transferee to be substituted in the action. Clearly, this section applies to parties defendant as well as parties plaintiff. Under it Clark might have been made a party defendant to the action, had he so elected in the court below. We think it might be done in this court. See *Packard* v. *Wood,* 17 Abb. Prac. 318; *Emmet* v. *Bowers,* 23 How. Prac. 300. Without the aid of any such statute, it was said in *Mosier* v. *Lumber Co.,* 66 Ill. App. 630: "It would seem, therefore, that the Savings Union became a purchaser pendente lite from persons [defendants below] as to whom the decree was erroneous, and that it has a right, as such purchaser, to prosecute its writ of error. One who is a party or privy to the record or injured by the judgment, and who will, consequently, derive advantage from its reversal, may bring a writ of error to reverse the judgment,"— citing 2 Tidd, Prac. *1135; *Hill's Heirs* v. *Hill's Ex'rs.,* 6 Ala. 166; *Dupree* v. *Perry,* 18 Ala. 34. The same is held in *Mason* v. *Peck,* 7 J. J. Marsh, 300. There the purchaser brought the writ in the name of the original defendant. See, also, *Marr* v. *Hanna,* Id. 642. There are cases opposed to this principle (*Clarke* v. *Koehler,* 32 Tex. 679; *Stout* v. *Mercantile Co.,* 41 W. Va. 339, 23 S. E. Rep. 571); and Benn. Lis Pend. § 225, cites the Texas case with approval. But the principle which permits a purchaser pendente lite to prosecute an appeal from a judgment adverse to his interests is so strongly reinforced by our statute that we are clear that Clark

might have appealed in this case, and, defendant having taken the appeal, Clarke may be heard to oppose its dismissal when he claims such dismissal would be in bad faith as to him on the part of both parties. It is true that Signor seeks to avoid Clark's right by claiming that the conveyance to Clark was without consideration. Of course, we cannot determine the character of that conveyance upon affidavits. We only hold that on the affidavits Clark makes a case which entitles him to have a decree, which would forever bar his rights, set aside if erroneous, and thus enable him to test the validity of the conveyance in a proper action.

Upon the merits of the appeal, we are clear that the trial court wrongly decided the main issue of fact, which was whether the assignment was made as security to the bank or as security to Schuyler. The only competent evidence that we find in the case tending to support the position that it was made to the bank is the fact that it was made to "C. C. Schuyler, Cashier," and Signor, when he made it, knew that Schuyler was cashier of said Citizens' National Bank. The general rule that the addition of such words as "Agent," "Treasurer," President," etc., to the name, is simply descriptio personæ, is undisputed; but it is also undisputed that there is an exception, or partial exception, to the rule in the case of cashiers of banks. It is now held that, where negotiable paper is made to A. B., "Cashier," or any abbreviation of that word, it is, prima facie, at least, the property of the bank of which A. B. is cashier. *Bank of State of New York* v. *Muskingum Branch of Bank of State of Ohio,* 29 N. Y. 619; *Bank* v. *Hall,* 44 N. Y. 395. In such cases, where the instrument is indorsed by "A. B. Cashier," and delivered to a bona fide holder, the bank alone is liable on the indorsement. *Folger* v. *Chase,* 18 Pick. 67; *Farmers' & Mechanics' Bank of Michigan* v. *Troy City Bank,* 1 Doug. (Mich.) 473. This exception to the rule has been established because banks act only through agents, and the cashier is the chief financial agent of the bank, and usage has sanctioned the practice of permitting banks to do business in that manner. This being so, the enforcement of the general rule would often work injustice, and the exeception becomes a legal necessity. But we find no case where this exception has been applied to any transaction other than those relating to commercial paper. In Daniel, Neg. Inst. § 417, the exceptions are limited to such transactions. The reasons upon which it is based necessarily so confine it. Banks, particularly national banks, do not ordinarily deal in real estate. In the exceptional cases where they are permitted to do so, they do not take or convey real estate through an agent. Such matters require more formality, and, in cases of transfer by the bank, they require a corporate seal. A transfer to "A. B., Cashier," might, in equity, be enforced by the bank, upon a showing that it was intended as a transfer to the bank. The same might be done to whomsoever the transfer might be made, but it would require evidence to establish such intention. The most that could be claimed for the word

"Cashier" would be that it raised a presumption of fact. Indeed, that is its entire scope in commercial paper, except where the paper is in the hands of a bona fide indorsee. *Baldwin* v. *Bank,* 1 Wall. 234; *Bank* v. *French,* 21 Pick. 486; *Metcalf* v. *Williams,* 104 U. S. 93; *Southern Pac. Co.* v. *Von Schmidt Dredge Co.,* 118 Cal. 368, 50 Pac. Rep. 650. If, therefore, the Citizens' National Bank, or plaintiff as its receiver, were suing defendant upon his promissory note executed to "C. C. Schuyler, Cashier," it would still be open to the defendant to deny plaintiff's ownership of the note, and establish such fact by parol testimony. Certain it is that his rights were no less in this case. When we turn to the parol evidence, we find it quite satisfactory. The note to the bank, except a small portion thereof, represented the indebtedness of defendant's mother, for which defendant had received no consideration, and as to which he was in fact simply surety. This was well known to the bank. No agreement, understanding, or request had ever been made that defendant should secure said note. Defendant was indebted to Schuyler, and at the time such indebtedness was incurred defendant stated to Schuyler that he (defendant) owned 17 (meaning the section in question), and that Schuyler should lose nothing. The assignment was drawn up in the bank by Mr. Schuyler, and given to a notary public, with instructions to go to defendant's place, and get it signed and acknowledged. When it was presented to defendant, he asked what it was for. The notary replied that he did not know. Defendant stated that he would not sign it if it was for the bank, as he did not wish to get his property mixed up in his mother's affairs. The notary told him that Schuyler said that he (defendant) would know what it was for. Defendant replied that he would sign it for Schuyler, but would not sign it for the bank. Thereupon it was signed, and delivered to the notary. It is too clear for question that no interest was conveyed to the bank by such assignment, and the trial court was wrong in holding that the assignment was made to the bank. Let judgment be entered in the District Court setting aside the former decree, in so far as it orders a foreclosure of defendant's interest in said land, and declaring that plaintiff has no interest in, or lien upon, said land under or by virtue of the aforesaid assignment. Reversed. All concur.