[Civ. No. 1189.  Second Appellate District.—February 13, 1913.]

GEORGE HAY, Appellant, v. R. McDONALD, Respondent.

BANKS AND BANKING—CONTRACT OF CASHIER.—A memorandum in the form of an "I. O. U.," written on the back of a blank check and signed "R. McD., Cashier," does not in itself appear to be the contract of the bank.

ID. — CONTRACTS — PARTIES AND SIGNATURES — DESCRIPTIVE WORDS.— Where, in the body of an instrument, no words appear to define the agreement as made on behalf of a party other than he whose signature is attached, it will not be deemed to be the contract of another, though there appear after the signature such qualifying or descriptive words as "President," "Secretary," or "Cashier."

ID.—PAROL EVIDENCE TO IDENTIFY PARTY.—In such cases parol evidence is admissible to identify the party against whom the obligation is legally chargeable.

ID.—NONSUIT—REVIEW OF JUDGMENT—CONSTRUCTION OF TESTIMONY.— In reviewing a judgment entered on motion for a nonsuit, any reasonable construction may be given plaintiff's testimony which will sustain the cause of action alleged.

APPEAL from a judgment of nonsuit of the Superior Court of Kern County.  J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

C. L. Claflin, E. W. Owen, and J. W. Wiley, for Appellant.

Geo. E. Whitaker, and E. L. Foster, for Respondent.

JAMES, J.—Plaintiff brought this action to recover upon an agreement alleged to have been made by defendant, and which was expressed in writing and in the following form:

"BAKERSFIELD, Mar. 29-07.

"I. O. U.

"One Thousand dollars on completion of sale of lots 3 & 4 in Block 273 in City of Bakersfield.

"R. MCDONALD,

"Cashier."

Other facts explanatory of the cause of action as alleged were: that the plaintiff had performed and rendered valuable services to defendant in negotiating the sale of the lots of land described in the contract, and that the sale of the real property had been completed prior to the commencement of the action; that defendant had, upon demand being made therefor, refused to pay plaintiff the one thousand dollars, or any part thereof. In the answer of defendant issue was taken as to all of the material allegations of the complaint. The cause came on for trial and after hearing the testimony of the plaintiff, and considering certain documentary evidence, the trial judge granted the motion of defendant that a judgment of nonsuit be entered. From the judgment so entered this appeal has been taken .

By the bill of exceptions, in which the evidence is set forth in narrative form, it appears that plaintiff was engaged by one Mr. Redlick to secure for the latter a piece of property suitable to the erection of a store building; that the lots mentioned in the agreement we have referred to were examined, and being satisfactory as to location, Redlick told the plaintiff that he would purchase them if the price was satisfactory; that plaintiff visited one Weill, who was the owner of the ground, and that Weill stated that he would accept eighteen thousand dollars for it, and allow five per cent commission to plaintiff on the sale; that plaintiff communicated the amount of the price asked to Redlick, and Redlick said he would not pay that amount, but would pay sixteen thousand dollars; that Redlick told plaintiff that he would not pay any commission, but that if plaintiff made anything on the transaction he must get it from the party from whom the property was purchased; that plaintiff then told Weill that he had a purchaser willing to pay sixteen thousand dollars for the lots, but

that Weill would not accept that price; that Redlick told plaintiff that he understood that the Kern Valley Bank owned the property, and asked plaintiff to investigate the question of title; that plaintiff did so investigate it, and found that the bank held a deed, absolute in form, conveying title from Weill to it; that he then approached the defendant, who was cashier of the bank, and asked if the bank owned the property, was told that it did, and that the property was for sale at a price of fifteen thousand dollars net to the bank; that plaintiff communicated again with Redlick, and Redlick reiterated that he was willing to pay sixteen thousand dollars for it, and requested plaintiff to get a contract from the bank to purchase the property and to take the contract in plaintiff's name for assignment to Redlick, as the latter did not want to be known in the transaction until he had procured some other property in the vicinity; that plaintiff saw McDonald again about it and that the latter said that Weill owed the bank quite a lot of money; that if he did not repay the same within a few days the bank was authorized to sell the property, and that it would sell it at the price stated; that later defendant called plaintiff up on the telephone and told him to come to the bank, and that upon plaintiff complying with that request defendant told him that the property was then ready for sale, if he wanted to make a deposit on it; that plaintiff did so make a deposit; and that defendant asked who the prospective purchaser was, and urged plaintiff to disclose his name; that after some discussion about that matter, which included communication with Redlick, Redlick told plaintiff that he might disclose to defendant that he, Redlick, was the proposed purchaser, provided that defendant would not make public that information; that plaintiff then told defendant that Redlick was paying sixteen thousand dollars for the property, and that he, the plaintiff, was to receive the difference between that amount and the amount of fifteen thousand dollars, which the bank had agreed to accept as the purchase price thereof; that defendant wished to be allowed to close the transaction with the bank, and that plaintiff said to him: "I have no objection to letting you close the transaction if you wish to do so, if it will benefit you any." Plaintiff then testified as follows: "He (McDonald) said he thought it would give him better prestige with the bank if he could report

it to them that he had sold it. I said, 'All right, you know what I am making, if you want to close the transaction you are welcome to do so, providing you will protect me for what I am going to get out of it, which you know is a thousand dollars.' He said he would be glad to do it, and took up the Kern Valley Bank check, and wrote on the back what has been introduced in evidence here, and gave it to me, and I went about my business. . . . Mr. McDonald asked me to let him make the contract himself for the full purchase price of sixteen thousand dollars, which Mr. Redlick was to pay, and gave me his I. O. U. as an offset against what was coming to me. Mr. Redlick had requested me to take the contract in my own name, and I had intended to do so and told Mr. McDonald so. When he requested me to let him make, consummate the deal, he said he would make the contract for $16,000, and that he would give me his I. O. U. to protect me for the $1,000. That is why he gave me this I. O. U. From that time on I left the negotiations to be conducted independently of myself.''

It is the contention of respondent that the contract upon which plaintiff sued was the contract of the Kern Valley Bank and not the personal contract of defendant. This view seems to have been adopted by the trial judge, hence his ruling granting the motion for judgment of nonsuit. In reviewing that judgment we need only suggest the rule, for it is too well established and settled to require support by citation of authority, that if any reasonable construction may be given to the testimony introduced on behalf of the plaintiff which will sustain the cause of action alleged in his complaint, that that construction is the one which must be adopted. The written contract or memorandum in the form of an ''I. O. U.'' cannot be said to evidence a contract of the Kern Valley Bank when it is examined alone and for what it shows upon its face. Where, in the body of an instrument, no words appear which serve to define the agreement as being made on behalf of a party other than he whose signature is attached thereto, it will not be deemed to be the contract of another party, even though there may appear after the appended signature of the individual, qualifying or descriptive words, such as ''President,'' ''Secretary,'' or, as here, ''Cashier.'' In such cases parol proof is admissible to identify the party against whom the obligation is legally chargeable. (*Hobson* v. *Hassett,* 76

Cal. 203, [9 Am. St. Rep. 193, 18 Pac. 320] ; *Southern Pac. Co.* v. *Von Schmidt Dredge Co.,* 118 Cal. 368, [50 Pac. ' 650] ; *McCormick* v. *Stockton etc. R. R. Co.,* 130 Cal. 100, [62 Pac. 267].) The fact that the "I. O. U." was written upon the back or reverse side of a blank check of the Kern Valley Bank is of no significance as evidence to the point that defendant intended to contract on behalf of the bank, and not on his own behalf; and we think that the oral testimony of plaintiff establishes quite clearly that the defendant in his personal capacity obligated himself to see that plaintiff was paid the one thousand dollars mentioned in the writing. By the testimony of plaintiff it was shown that defendant desired to be allowed to close the transaction with the bank, as it would give him "better prestige" with the institution employing him. This was a consideration purely personal to himself. Plaintiff told him that he might do so, provided he would protect him as to the amount of plaintiff's profit of one thousand dollars. This condition, the evidence shows, defendant agreed to. Under these facts, it cannot be said that when plaintiff rested his case at the trial and before defendant had introduced any testimony in his behalf contradicting the proof made by plaintiff that no liability was shown as against defendant in his individual capacity. We think the court erred in granting the motion for judgment of nonsuit.

The judgment is reversed.

Allen, P. J., and Shaw, J., concurred.