[S. F. No. 4889. Department Two.—June 18, 1909.]

## EDWARD LYNCH, Appellant, v. M. JASPER McDONALD et al., Respondents.

CORPORATION—LIABILITY OF PRESIDENT IN INDIVIDUAL CAPACITY ON CORPORATE CONTRACT.—A written contract between a corporation and its attorney, which was signed by the president of the corporation only in his official capacity, whereby the corporation agreed to pay the attorney for his past services a certain sum of money from the proceeds of the sale of its corporate property, and to further pay him a specified monthly salary for his future services, does not impose any individual obligation on the president to make such payments, notwithstanding he owned nearly all the capital stock of the corporation, and dominated its policy.

ID.—MISREPRESENTATIONS BY PRESIDENT.—Where such attorney was thoroughly familiar with all the facts concerning the president's relation to the corporation, the fact that the latter misrepresented to him the matter of the corporation's profits would not have the effect of rendering him individually liable on the contract.

ID.—CONTRACT SIGNED BY PRESIDENT "AS STOCKHOLDER."—A subsequent contract, between the attorney and the corporation, which was signed by the president in his official capacity and also as "stockholder," whereby the former agreement was extended so far as related to the provision for the payment of a monthly salary, cannot be construed as imposing a personal liability on the president for the amount agreed to be paid the attorney for his past services from the proceeds of the sale of the corporate property.

ID.—EVIDENCE OF INTENT.—Parol evidence was admissible to show, and in this case does show, that the president, by the use of the words "as stockholder," did not intend to be bound personally.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

Edward Lynch, and Bertin A. Weyl, for Appellant.

George C. Sargent, and Thomas H. Breeze, for Respondent.

MELVIN, J.—Plaintiff and appellant sued on a certain written contract and obtained judgment according to the prayer of his complaint against the defendant corporation. The superior court entered judgment dismissing the complaint

as against M. Jasper McDonald individually and this appeal is taken from that part of the judgment. The contract upon which the action was based was drawn (as were other contracts put in evidence) by the plaintiff who had been for a long time the attorney for the mining company and for McDonald. The contract recited the services of Lynch as attorney and mining expert and provided for the payment to him for such services from the sale of a group of mines at Amador City, owned by the Keystone Consolidated Mining Company, the sum of twenty thousand dollars; and in case there should not be an early sale of said property the said sum of twenty thousand dollars was to be paid from the monthly proceeds of the mine not to exceed ten per cent of the net profit. The agreement also contained a provision for the payment of a salary to Lynch for legal and other services to be rendered. This contract was dated March 1, 1901. While in form it was between the corporation and McDonald on the one part and Lynch on the other, it was signed by McDonald only in his capacity as president of the corporation, by Anderson as secretary thereof, and by plaintiff. The court found: "That the provision of the contract set forth in the complaint, as follows: 'Said parties of the first part hereby employ the party of the second part to render all such services for three years from date hereof; and it is agreed that said Lynch shall be paid by the parties of the first part $150.00 per month for said services,' was continued in force by two certain agreements entered into and executed by and between said defendants and said plaintiff, dated February 12th, 1904, and September 27th, 1904, wherein and whereby reference was made to said contract dated March 1st, 1901, copied in the complaint, and it was provided in each of said agreements, dated February 12th, 1904, and September 27th, 1904, that 'the agreement made March 1st, 1901, between the said parties as are contracting hereby providing for payment to said Lynch of $150.00 per month shall remain in full force and effect until the provisions thereof are fully performed.' "

Appellant contends that, inasmuch as McDonald owned nearly all of the capital stock of the corporation and dominated its policy, it was his *"alter ego"*—that its acts were McDonald's acts and that the judgment should therefore be against him personally as well as against the Keystone Consolidated Min-

CLV Cal.—45

ing Company. Plaintiff earnestly protests that the corporate name was merely a cloak which McDonald should not be allowed to use to prevent plaintiff from securing a personal judgment against him, particularly in view of the court's finding that McDonald misrepresented to plaintiff the matter of profits from the mine and in contemplation of the further fact that the agreements made after that of 1901 were signed by McDonald in his personal as well as his presidential capacity.

If this were an action by a stranger to the facts, who had been injured by ignorance of McDonald's holding of nearly all of the stock of the company, there might be some force in appellant's position and some necessity for the application of the principle which he invokes; but appellant was not only an attorney at law, but was one who by years of association with McDonald and service for him and the company was thoroughly familiar with all the facts concerning the president's relation to the corporation. If he was content to act under a contract which respondent refused to sign except as an officer of the company he cannot complain that McDonald, who was not a party signatory to the instrument, is not bound. True, McDonald, according to the findings, deceived Lynch with reference to the net earnings of the mines, but this deception had nothing to do with McDonald's relation to the corporation. Lynch knew all about McDonald's holdings; was cognizant of the resolution of the board of trustees authorizing the president to act for the corporation in practically all matters and had advised respondent in all business affairs, including the effect of the various contracts prepared by Lynch and signed by him and one or both of these defendants.

The contract of September 27, 1904, is signed by McDonald as president of the company, and again as "stockholder." If we treat the signature as the personal sign manual of McDonald and ignore the words "as stockholder," still we cannot say that by any method of construction, the liability of the signer is extended to the debt of twenty thousand dollars mentioned in the instrument bearing date of March 1, 1901, because the promise of latest date is made with respect to the salary only. There was sufficient evidence to justify the court in the conclusion that by the use of the words "as stockholder," McDonald wished to show that he did not intend to be bound personally. That was a matter to be determined by parol testimony

(*Southern Pacific Co.* v. *Von Schmidt Dredge Co.*, 118 Cal. 371, [50 Pac. 650].) But whether or not ordinarily such a signature would amount to a personal assent to the terms of the agreement, there are other facts in evidence which would justify the lower court's decision. It was shown that Lynch was McDonald's confidential adviser and it nowhere appears that upon presenting for signature any one of the various contracts following that of March 1, 1901, the attorney had explained that the former agreement was not binding upon McDonald but that the new one would be. It was appellant's duty to show such good faith affirmatively. He failed to do so and the trial court was justified in refusing to consider that the contracts following that of March 1, 1901, operated to extend the liability of the original contract to respondent McDonald. (See 2 Pomeroy's Equity Jurisprudence, sec. 902; *Felton* v. *Le Breton*, 92 Cal. 469, [28 Pac. 490], *Cox* v. *Delmas*, 99 Cal. 104, [33 Pac. 836].)

It follows that the judgment must be affirmed and it is so ordered.

Lorigan, J., and Henshaw, J., concurred.

Hearing in Bank denied.

In denying the hearing in Bank, the court in Bank rendered the following opinion on July 17, 1909:—

THE COURT.—A rehearing of this cause is denied, but it is proper to say that so far as the Department opinion may seem to imply that Mr. Lynch failed in his professional duty to the defendant McDonald such a conclusion is unwarranted. The findings of the court and the evidence in the case show that throughout the transactions between himself and the defendants he acted in perfect good faith.