[Civ. No. 34424. Second Dist., Div. Four. May 6, 1970.]

JOSEPH S. POTTS, as Trustee, etc., Plaintiff and Appellant, v. FIRST CITY BANK, Defendant and Respondent.

## COUNSEL

Tiernan & Moneymaker and Richard M. Moneymaker for Plaintiff and Appellant.

Fleming, Robbins & Sanchez and Ernest E. Sanchez for Defendant and Respondent.

## OPINION

**KINGSLEY, J.**—In April 1965, William R. Flint, Betty Louise Flint (his wife) and Margaret Parr, as incorporators, duly organized a corporation known as Gourmandises, Inc. The articles of incorporation provided for a single class of stock, in the amount of 20,000 shares with a par value of $10 per share. The two Flints subscribed for 100 shares of stock and paid the corporation $1,000 therefor. No other stock was ever subscribed for or issued. The three incorporators were designated as the original board of directors; Margaret Parr resigned immediately after the incorporation and no successor was ever named in her place.

The corporation then caused to be formed a limited partnership, known as Flint's Galley, in which it was the general partner and other persons, including two members of the advisory board of defendant bank, were limited partners.

The corporation opened a commercial account with defendant bank, in the name of Gourmandises, Inc., doing business as Flint's Galley. The initial deposit in that account was $6,000; only the Flints were authorized to withdraw funds from that account.

Gourmandises, Inc., attempted to borrow money from the bank but the bank refused to make a loan to the corporation and would only make a loan directly to the Flints as individuals. On October 5, 1965, the bank loaned $6,000 to the Flints evidenced by a promissory note executed only by the Flints. The bank did not seek a corporate guaranty or endorsement by Gourmandises, Inc. On January 3, 1966, the bank obtained a renewal note for the $6,000 loan to the Flints. That note, also, was executed only by the Flints and, again, the bank did not ask for or obtain a corporate guaranty or endorsement of the note from Gourmandises.

The $6,000 loaned to the Flints was deposited in the corporate bank account as a loan to the corporation, and Gourmandises, Inc., executed a note for that sum to the Flints. The money was used in the operation of the restaurant.

On April 25, 1966, Mrs. Lamoreaux loaned $10,000 to Gourmandises, Inc., and this was deposited in the corporate bank account.

On April 27, 1966, prior to any withdrawal of these funds, the bank offset the bank account for $6,124.58, which was the sum owed by the Flints together with accrued interest. Mrs. Flint protested the offset of the corporate bank account by the bank. Flint's Galley ceased operations because of lack of funds. Gourmandises, Inc., filed bankruptcy and plaintiff

Potts was appointed trustee in bankruptcy. Mrs. Lamoreaux and other creditors remain unpaid.

Plaintiff sued the bank, in two counts, one seeking recovery of the $6,124.58, with interest, the other seeking $94,916.41, as damages on the theory that the offset was illegal and that it had caused the corporate bankruptcy. The answer set up, as a defense, a claim that the corporation was the *alter ego* of the Flints and justified the offset on that ground. Plaintiff demurred to the answer on the ground that it did not plead the *alter ego* theory with sufficient particularity. The demurrer was overruled[1] and the case went to trial before the court, sitting without a jury. The findings were in favor of defendant and plaintiff has appealed. We reverse the judgment.

## I

Although the parties in the trial court, and here, argue at length concerning the application of the so-called *"alter ego"* doctrine to a case where, reversing the usual situation, it is sought to hold a corporation for a debt contracted in the name of its sole stockholders, we think their debate is not in point on the facts before us. What we have is merely a case in which the corporation is being charged with a debt allegedly contracted on its account by its agent and the case can, and must, be determined on ordinary agency principles.

## II

It is clear that the bank had no right of offset based on the promissory notes executed by the Flints. Subdivision (1) of section 3401 of the Commercial Code provides: "No person is liable on an instrument unless his signature appears thereon."

However, section 3401 does not prevent the payee of a note from collecting from a non-signer in a proceeding based on the obligation underlying the note. (*McClung* v. *Saito* (1970) 4 Cal.App.3d 143, 150-151 [84 Cal. Rptr. 44], and cases there cited.) The issue before us, therefore, is whether or not the circumstances surrounding this transaction were such as to render the corporation liable to the bank on the loan which was the consideration for the note and which the note evidenced.

In the converse situation, where the borrower has sought to avoid personal liability on the theory that he acted only as agent, the cases hold

---

[1]The record does not show the disposition of the demurrer but the briefs assert that it was overruled. Since the matter went to trial on the answer we assume that the briefs are correct.

that individual liability exists. (*Bank of America* v. *Superior Court* (1970) 4 Cal.App.3d 435 [84 Cal.Rptr. 421]; *Beverly Hills Nat. Bank* v. *Glynn* (1968) 267 Cal.App.2d 859, 868-869 [73 Cal.Rptr. 808].) But the fact that the borrower may be personally liable does not, necessarily, mean that the ultimate beneficiary of the transaction may not also be liable.

It is clear from the record that the Flints were acting for the benefit of the corporation and the limited partnership in seeking and in securing the loan. The proceeds of the loan, at their express direction, found their way into the bank account of the limited partnership. But, even if we assume that the Flints were "agents" of the corporation and not merely its financial angels, corporate liability does not necessarily follow from that fact alone. The general rule is thus stated in section 144 of the Restatement Second of Agency: "A disclosed or partially disclosed principal is subject to liability upon contracts made by an agent acting within his authority if made in proper form *and with the understanding that the principal is a party.*" (Italics added.) This general statement is amplified in section 146 of the Restatement, as follows: "If an agent of a disclosed or partially disclosed principal makes an authorized contract with a third person, the liability of the principal thereon depends upon the agreement between the agent and the other party as to the parties to the transaction."

We think that the facts surrounding the transaction, as above summarized, make it clear that, in the case at bench, the bank and the Flints had agreed that the Flints, and not the corporation, should be the parties to the loan. The bank was fully aware of all of the affairs of the restaurant enterprise and of its delicate financial status; two members of the bank's advisory board were limited partners in the restaurant, thus making the bank subject to criticism (if not more) if it made a loan to such a shaky business; the bank had been asked, and refused, to loan directly to the corporation; the bank failed to ask for or to secure any corporate endorsement on, or guarantee of, the notes. We can find in these facts only a definite intention by the bank *not* to treat the corporation as being, in any way, a party to the loan. It looked only to the Flints and to their personal credit; it cannot now look further.

The case at bench is substantially on all fours with the case of *In re John Koke Co.* (9th Cir. 1930) 38 F.2d 232. In that case, as here, the dominant stockholder of a corporation in financial difficulties borrowed money on his individual note and then lent it to the corporation. The lender, as here, had full knowledge of the relationships, of the financial straits of the corporation, and of the intended use of the borrowed funds. In rejecting a claim in bankruptcy filed by the lender against the corporation, the court, at page 233, said, in language equally pertinent here: "The rule is quite

elementary that a corporation is an entity separate and distinct from its stockholders, with separate and distinct rights and liabilities; and this is true even though a single individual may own all, or nearly all, of the capital stock. True, courts, in exceptional cases, will look behind the corporate form in order to redress fraud, protect the rights of third persons, or prevent a palpable injustice; but there is no reason for invoking any such exceptional rule here, because it is not claimed that there was fraud, concealment, or even ignorance of any material fact in the original transaction. On the contrary, the lender, with full knowledge of all the facts, and presumably with full knowledge of the legal consequences of his act, elected to take the promissory note of the individual, secured by collateral, and there is no reason that we can conceive of why he, and those claiming under him, should not now be bound by the election thus made, in view of the possible intervening rights of other creditors. *Lynch* v. *McDonald,* 155 Cal. 704 [102 P. 918]; *Lawton* v. *Dargan* (C.C.A.) 238 F. 303."

The judgment is reversed.

Files, P. J., and Jefferson, J., concurred.