FEDERAL DEPOSIT INSURANCE CORPORATION *vs.*
FRANK CSONGOR.

Middlesex.   December 5, 1983. — April 26, 1984.

Present: HENNESSEY, C.J., LIACOS, NOLAN, & O'CONNOR, JJ.

*Bank. Debt. Practice, Civil,* Summary judgment. *Evidence,* Business record, Deposition.

In an action to collect a debt owed to a bank, the defendant's challenge to the authenticity of his signature on a promissory note raised no disputed issue of material fact precluding summary judgment for the plaintiff, where the plaintiff's uncontradicted affidavits, accompanied by business records of the bank and supported by the defendant's admission in his deposition testimony, were sufficient to establish the existence of the debt underlying the note. [740-743]

CIVIL ACTION commenced in the First District Court of Eastern Middlesex on May 19, 1976.

On removal to the Superior Court the case was heard by *John Paul Sullivan,* J., on a motion for summary judgment.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Thomas G. Hoffman* for the defendant.

*Ira K. Gross (Brian E. Pastuszenski* with him) for the plaintiff.

HENNESSEY, C.J. The plaintiff, Federal Deposit Insurance Corporation (FDIC), as liquidator of Surety Bank and Trust Company (bank) pursuant to G. L. c. 167, § 26, brought an action against the defendant, Frank Csongor, for collection of a debt.[1] The plaintiff filed a motion for summary judgment,

---

[1] The plaintiff also filed an action against the defendant's brother, Desider Csongor, which was consolidated with the action against the defendant. The trial judge granted summary judgment against Desider Csongor. Desider Csongor's appeal, however, has been dismissed for lack of prosecution.

together with supporting affidavits. The defendant opposed the motion and submitted his own affidavit. In a detailed opinion covering all issues raised by the parties, the trial judge ordered summary judgment for the plaintiff. The defendant appealed, and we transferred the case here on our own motion. We conclude the judge correctly ordered summary judgment on the basis of the underlying debt owed by the defendant to the plaintiff, and in the circumstances of this case the judge did not need to address whether summary judgment would have been proper solely on the basis of the 1972 note. We affirm.

We summarize the facts as presented in the affidavits of both parties. The plaintiff introduced several affidavits relevant to this appeal. First was the affidavit of James A. Krachey, a liquidator for the bank. Krachey obtained the bank's records, among which was a promissory note dated March 21, 1972, in the amount of $153,260.86, payable to the bank on June 19, 1972, and signed by the defendant. The records also contained a "liability card" bearing the defendant's name and address. The bank maintained in the ordinary course of its business such liability cards on all borrowers as a record of loans made and payments received. Entries on the defendant's liability card were as follows: an entry recording a bank note taken from the defendant on August 16, 1971 (the 1971 note), in the amount of $149, 454, bearing interest at a rate of seven percent and due on February 9, 1972; an entry recording a bank note taken from the defendant on March 22, 1972 (the 1972 note), in the amount of $153,260.86, renewing the 1971 note. Next, the bank records contained four cancelled treasurer's checks drawn on the bank payable to and endorsed by the defendant. They were all dated August 13, 1971, and totaled $144,400, the amount of the 1971 note less $5,054 in prepaid interest. The records reflect that no payment was made on either note. The plaintiffs also submitted an affidavit of Ronald G. Willard, who was a liquidator of the bank in 1972. In the ordinary course of his work as a liquidator for the FDIC, he prepared a "tracing file" for Csongor's account. The tracing file was compiled from records kept in the ordinary course of the bank's business and shows the application that was made of

the proceeds of the loan being traced. Willard traced the proceeds of the defendant's 1971 note to the four treasurer's checks discussed above. The proceeds were used to satisfy various obligations to the bank. See *infra* at 742. He also traced the 1972 note to the 1971 note. He states that the 1972 note renewed the 1971 note. The third affidavit presented by the plaintiff was made by Elizabeth McCarthy, a documents examiner who compared the signature on the 1972 note to certain other signatures admitted by the defendant to be his own. She stated her conclusion that the signature on the 1972 note and the signatures on the other documents were made by the same person. Finally, the plaintiff submitted affidavits of Mr. Ira K. Gross, the plaintiff's attorney, with portions of the defendant's sworn deposition testimony attached. In his deposition taken on May 27, 1980, the defendant testified that he had signed a blank note payable to the bank in the summer of 1971. He stated that he had gone to the bank and signed the note to help his brother. In addition, he gave sworn testimony in a deposition taken July 17, 1977, that in 1970 he was on the payroll of Northeast Welding & Machine Co., Inc., and later obtained stock in the company. Also attached to the affidavit of Mr. Gross was a certified copy of the articles of organization of International Technical Group, Inc., which listed the defendant as a director.

The afffidavit submitted by the defendant stated: "1. On or about March 21, 1972, I signed a blank promissory note with the Surety Bank and Trust Company which was presented to me by the Bank's President, Daniel Moore. 2. At no time did I believe I was responsible for payment on the blank promissory note. 3. At no time did I personally receive any monies from the bank funds, as a result of signing the blank promissory note. 4. My brother, Desider Csongor, informed me that Daniel Moore had represented to him that the Bank would not require payment by me of indebtedness on the blank promissory note. 5. I would not have executed the note if Mr. Moore had informed me that I was personally liable for repayment of the funds. 6. I have examined the note which the plaintiff asserts that I signed. It is my honest belief that the signature on the note which I examined is not mine."

The judge stated that, "[a]fter reviewing the affidavits and counter-affidavits supporting and opposing the motion for summary judgment, this Court rules that as a matter of state commercial law the defendants have failed to raise a genuine, triable issue relating to their proffered commercial defenses, and the FDIC is entitled to summary judgment. However, even assuming that one or more of the commercial defenses were made out, the [Csongors] would be estopped from raising these defenses under applicable federal law." On appeal, the defendant challenges the judge's decision on three grounds. First, he argues that there was insufficient uncontradicted evidence of a debt owed to the plaintiff to justify a grant of summary judgment. Second, he claims to have produced sufficient evidence of his status as an accommodation maker to preclude a grant of summary judgment. Finally, he asserts that the entry of summary judgment was improper because he denied that he had received or borrowed money at the "time he signed the blank promissory note."[2] There is not merit in any of the defendant's contentions.

"Summary judgment is a 'device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts . . . . '" *Cassesso* v. *Commissioner of Correction*, 390 Mass. 419, 422 (1983), quoting *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 553 (1976). Reviewing the order of summary judgment now before us, we will uphold it if "certain factors converge to convince us that the trial judge was ruling in this case on undisputed facts and, of course, that his ruling was correct as matter of law." *Community Nat'l Bank* v. *Dawes, supra* at 556. See *Farley* v. *Sprague*, 374 Mass. 419, 425 (1978). Accordingly, the defendant must have established by sworn statements some dispute of material fact, or must demonstrate some error of law, for this court to overturn the order of the trial judge.

---

[2] The defendant also argues that Federal law is not applicable to this case. We do not address this argument, as we resolve the defendant's appeal solely on State law grounds.

The defendant argues that he has met his burden of raising a disputed issue of material fact by challenging the authenticity of his signature on the 1972 note. See G. L. c. 106, § 3-401 (1), inserted by St. 1957, c. 765, § 1 ("No person is liable on an instrument unless his signature appears thereon"). Nonetheless, as the judge points out, the official comment to G. L. c. 106, § 3-401 (1), provides as follows: "Nothing in this section is intended to prevent any liability arising apart from the instrument itself. The party who does not sign may still be liable on the original obligation for which the instrument was given. . . . He may of course be liable under any separate writing." Comment to § 3-401 of the Uniform Commercial Code, 2 U.L.A. (Master ed. 1977). See *Potts* v. *First City Bank*, 7 Cal. App. 3d 341, 344 (1970). See also J. White & R. Summers, Uniform Commercial Code § 13-2, at 489 & n.2 (2d ed. 1980), and cases cited. Therefore, if the plaintiff has presented undisputed prima facie evidence of an unsatisfied debt of the defendant underlying the 1972 note, then whether the defendant's signature on the 1972 note is authentic raises no genuine issue of *material* fact. The plaintiff will recover regardless of the authenticity of the defendant's signature on the 1972 note.

The plaintiff presented by sworn affidavit three business records and an admission by the defendant to establish the existence of a debt underlying the 1972 note. The first business record presented was a liability card of the bank. The card indicated that the defendant gave the bank a note for $149,454, bearing interest at a rate of seven percent a year and coming due on February 9, 1972. The card also indicates that the defendant gave the bank a second note in March of 1972 to renew the 1971 note in the amount of $153,260.86. Finally, the card indicates that neither of these notes was ever paid. Second, the plaintiff presented four cancelled treasurer's checks drawn on the bank, and issued to the order of, and indorsed by, the defendant. The final business record was a tracing report constructed by the plaintiff as a liquidator indicating that the four treasurer's checks were the proceeds of the 1971 note, less prepaid interest, that the 1972 note renewed the

1971 note, and that the proceeds of the treasurer's checks were used as follows: $33.78 was paid in cash; $59,171.25 was used to pay a personal obligation of the defendant's brother to the bank; $25,000 was used to pay an obligation of International Technical Group, Inc., to the bank; $57,424.15 was used to pay a commercial obligation of Northeast Welding & Machine Co., Inc., to the bank. The defendant's admission was his sworn deposition testimony that he signed a blank note to the bank in the summer of 1971.

This sworn evidence is sufficient to establish the plaintiff's prima facie case of a debt underlying the 1972 note. The plaintiff states in sworn affidavits that all the business records referred to were kept in the ordinary course of business. The defendant presents nothing in his affidavit to show they were not so kept. Accordingly, these records may be considered as evidence of the facts stated therein. G. L. c. 233, § 78.

The defendant makes no sworn statements contesting a genuine issue of material fact regarding the authenticity of any of these bank records, or of his admission. He asserts only that "[a]t no time did I personally receive any monies from the bank funds," and that "[o]n or about March 21, 1972, I signed a blank promissory note with the Surety Bank and Trust Company." These statements hardly raise a disputed issue of material fact regarding the existence of a debt underlying the 1972 note. The defendant would have us infer from his purported failure "personally" to receive any bank funds, that he owed no debt to the bank under the 1971 note and the four treasurer's checks. Nevertheless, he does not deny that he signed a note to the bank in August, 1971, that his signatures on the cancelled bank treasurer's checks are valid, or that he had most of the money from the checks transferred within the bank to satisfy the obligations of others in whom he was interested. In addition, he apparently would have us infer, from his statement that he signed a promissory note to the bank in March of 1972, that he did not sign one in 1971, although his deposition testimony is to the contrary. Such inferences are insufficient to raise a genuine issue of material fact. "[T]he bare assertion of inferences on appeal — or, for that matter,

before the trial judge — raises no genuine issue of material fact." *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 559 (1976).

The defendant has failed to raise genuine issues of material fact regarding the plaintiff's prima facie case of an unsatisfied obligation underlying the 1972 note. That the judge ordered summary judgment on the underlying debt is further demonstrated by the fact that interest was calculated from the date of the complaint in the statutory amount, rather than as specified in the notes. Accordingly, we agree with the judge's ruling that the "defendant's raising a factual issue of the authenticity of the [1972 note] does not raise a factual issue which is material in the resolution of this dispute." We affirm the summary judgment entered by the trial judge. We do so solely on State law grounds and express no opinion concerning the issues of Federal law raised by the parties and addressed by the trial judge.

*Judgment affirmed.*