**Elaine SAVOY, Plaintiff,**

v.

**Randolph L. WHITE, the Money Tree, Inc., Frank Tocci, Blue Hill Federal Credit Union, Karen Neri, National Credit Union Administration, and Rhodes Financial Services, Inc., Defendants.**

Civ. A. No. 90–12152–S.

United States District Court,
D. Massachusetts.

Jan. 8, 1992.

Memorandum and Order on Plaintiffs
Motion for Reconsideration
Feb. 19, 1992.

Jerry C. Effren, Catanzaro, Effren & Herrick, P.C., Rosemary Ann Bosselait, Catanzaro & Effren, P.C., Ashland, Mass., for plaintiff.

R. Alan Fryer, William A. Stibel, Peabody & Arnold, Boston, Mass., Stuart H. Sojcher, Framingham, Mass., A. Van C. Lanckton, Marjorie R. Summers, Craig & Macauley, P.C., Laurence M. Field, Posternak, Blankstein & Lund, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER ON DEFENDANT NATIONAL CREDIT UNION ADMINISTRATION'S MOTION FOR SUMMARY JUDGMENT

SKINNER, District Judge.

Plaintiff Elaine Savoy executed four promissory notes to Blue Hill Federal Credit Union (Blue Hill) for over $600,000, secured by mortgages on properties which Savoy owns, and personally guaranteed by Savoy through separate instruments. Various defendants, including Blue Hill's president, allegedly convinced Savoy to use the money to purchase a set of mortgage assignments which eventually failed. Having lost her entire investment, Savoy was unable to make payments on the promissory notes and Blue Hill initiated foreclosure proceedings on the properties used as collateral. Savoy initiated this suit against Blue Hill and the other defendants, claiming that various misrepresentations and omissions by the defendants caused her to make the ill-fated transactions, and that Blue Hill had assured her that it would not foreclose on her properties. Shortly after this suit was filed, Blue Hill sailed into choppy financial waters and the National Credit Union Administration (NCUA)

placed Blue Hill first in conservatorship, and finally in receivership. On motion, the NCUA was substituted for Blue Hill as a defendant in this action.

Savoy's complaint alleges breach of good faith and fair dealing, fraud, negligence, breach of fiduciary duty, negligence, conspiracy, and violation of M.G.L., c. 93A against Blue Hill. Counts one through six of NCUA's counterclaim allege that Savoy is indebted on the four notes and guaranties, and NCUA seeks a declaratory judgment that Savoy is liable on the notes and has the right to foreclose on the mortgages which secure the amounts due.

NCUA moves for summary judgment on all of Savoy's claims and on counts one through six of its counterclaim based on NCUA's assertion that all of the defendants' alleged misrepresentations and secret agreements were made orally. NCUA relies on 12 U.S.C. § 1787(p)(2) [1] and the doctrine first articulated in *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) to assert that unrecorded side agreements are not enforceable as against the NCUA.

█ For purposes of a motion for summary judgment, I take the well-pleaded facts as they appear in the complaint, indulging every reasonable inference in favor of the non-moving party. *See Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). The movant is entitled to judgment as a matter of law if he shows that there is no genuine issue of material fact in dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### 12 U.S.C. § 1787(p)(2)

█ The NCUA's governing statute, 12 U.S.C. § 1751 *et seq.*, provides that when the NCUA is acting as receiver of a credit union,

> No agreement which tends to diminish or defeat the right, title, or interest of the

---

**1.** When the NCUA filed its motion, it was acting as conservator and it relied on 12 U.S.C. § 1788(a)(3). The NCUA is now acting as receiver and the applicable provision, 12 U.S.C. § 1787(p)(2), has been substituted in this memorandum for clarity. The terms in each provision are identical.

Board in any asset acquired by it under this subsection, whether as security for a loan or by purchase, shall be valid against the Board unless such agreement—

(A) shall be in writing; ...

12 U.S.C. § 1787(p)(2). The substantive language is identical to that in the provision governing situations where the agency is acting as conservator of the credit union, *see* 12 U.S.C. § 1788(a)(3), and to the language of the comparable provision of the FDIC's enabling statute, *see* 12 U.S.C. § 1823(e). Case law interpreting the identical provision in these other statutes is applicable to § 1787(p)(2) because all of the agencies which regulate financial institutions are in the similar special position of safeguarding the interests of the depositors at large.

In *Langley v. Federal Deposit Ins. Corp.*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), the Supreme Court held that a borrower who signed a facially unqualified note could not assert as a defense against the FDIC a claim that the note was subject to unwritten conditions, or that the borrower was fraudulently induced to make the transaction by oral misrepresentations of the bank. The Court interpreted § 1823(e)'s use of the word "agreement" to include any *"scheme or arrangement whereby the banking authority ... was likely to be misled."* *Id.*, 108 S.Ct. at 402 (emphasis in *Langley*). Here, the unwritten misrepresentations upon which Savoy relied are likely to mislead the NCUA in exactly the same way that the FDIC was misled in *Langley*, i.e., that the facially unqualified mortgages, notes, and guaranty agreements of the credit unions it oversees are enforceable by their terms.

Should Savoy prevail, enforcement of the agreements allegedly made by the defendants would diminish or defeat the NCUA's interest in the contested assets, because under 12 U.S.C. § 1787(b)(2)(A) the NCUA succeeded to "all rights, titles, powers, and privileges of the credit union ..." as conservator of Blue Hill.

The final element of § 1787(p)(2) is that such agreements be in writing. The NCUA asserts that all of Savoy's difficulties emanate from false or misleading oral statements allegedly made by the various defendants. These assertions are not genuinely contested by Savoy, and I thus accept them as true. *See* LR D.Mass. 56.1; *see, e.g., Garside v. Osco Drug, Inc.*, 895 F.2d 46 (1st Cir.1990). The NCUA is entitled to summary judgment under 12 U.S.C. § 1787(p)(2).

### D'Oench Doctrine

■ Even if NCUA's statutory argument were insufficient, the common law doctrine of *D'Oench, supra*, accords the agency even greater protection against Savoy's claims and defenses than does § 1787(p)(2). In *D'Oench*, the plaintiff argued that a facially sufficient agreement should not be enforced because an unrecorded agreement of non-enforcement had also been executed. The Court held that the FDIC has an absolute defense against alleged "side agreements" which might have any tendency to deceive federal regulators. *Id.*, 315 U.S. at 459–60, 62 S.Ct. at 680–81. Application of the *D'Oench* doctrine does not require a showing that a party had an intent to defraud; rather, the doctrine prohibits enforcement of any unwritten agreement which tends to undermine the book value of the financial institution's assets. *See Federal Deposit Ins. Corp. v. P.L.M. Int'l., Inc.*, 834 F.2d 248, 252–53 (1st Cir.1987).

The *D'Oench* doctrine has been used whether the banking agency is the FDIC, *see, e.g., D'Oench, supra*, the FSLIC, *see, e.g., Federal Sav. & Loan Ins. Corp. v. Murray*, 853 F.2d 1251 (5th Cir.1988), the RTC, *see, e.g., Resolution Trust Corp. v. Clark*, 741 F.Supp. 896 (S.D.Fla.1990), or the NCUA, *see, e.g., National Credit Union Admin. Bd. v. First Nat. Bank*, 690 F.Supp. 1580 (N.D.Ill.1988). The doctrine has been used when the federal agency is acting in its corporate capacity, *see, e.g., D'Oench, supra*, when acting as conservator of a failing institution, *see, e.g., Resolution Trust Corp. v. Clark*, 741 F.Supp. 896 (S.D.Fla.1990), or when acting as a receiver of a failed institution, *see, e.g., Federal*

*Sav. & Loan Ins. Corp. v. Two Rivers Associates,* 880 F.2d 1267 (11th Cir.1989).

 The *D'Oench* doctrine applies even if the federal agency had actual notice of the alleged side agreements when it took over the institution. *See Langley,* 108 S.Ct. 396, 401–02. The agency may use the doctrine both as a shield to protect itself from the claims of a borrower and as a sword to estop the borrower from denying liability on a note. *See Timberland Design, Inc., v. First Service Bank for Sav.,* 932 F.2d 46 (1st Cir.1991). In addition, *"D'Oench* bars defenses and affirmative claims whether cloaked in terms of contract or tort, as long as those claims rise out of an alleged secret agreement." *Id.* at 50.

 The *D'Oench* doctrine applies to the present case. Savoy's allegations of oral misdeeds cannot form a basis of liability for the NCUA when it is acting as conservator or receiver of Blue Hill. Nor may Savoy raise as a defense against the NCUA any alleged oral representations of the officers of the credit union.

*Fraud in the Factum*

 Savoy's only argument which gives the court pause is her contention that she was the victim of fraud in the factum in that she didn't understand that she was actually "closing" a transaction at the time she executed several documents. Fraud in the factum occurs where a party signs a document without knowledge of its true nature or contents, *see* U.C.C. § 3–305(2)(c), and since it would render the underlying documents void as opposed to voidable, it is a "real" defense which Savoy could assert as against the NCUA. *See* Restatement (Second) of Contracts § 163 and comments *a, b,* and *c. See also Langley,* 108 S.Ct. at 402.

 Savoy has not shown any indicia of fraud in the factum in her submissions. She does not allege, for instance, that a false document was placed in such a way as to conceal the words "MORTGAGE" or "PROMISSORY NOTE" on the face of the documents she signed, or that she was denied the opportunity to examine the contents of the agreements. Rather, she says that she understood that she was required to sign some "preliminary documents" in order to "get this [transaction] moving," and she was not aware that by signing the documents before her she was actually "closing" the deal. Savoy's understanding of exactly what constitutes a "closing" is not relevant to the issue of fraud in the factum. She knew that the documents were associated with the transaction which she alleges was fraudulently *induced.* Since Savoy does not allege any facts from which a case of fraud *in the factum* could be made, her argument fails.

*Motion to Vacate*

On June 5, 1991, by endorsement, I allowed plaintiff's Motion for Leave to Amend Opposition to Motion for Summary Judgment Upon Completion of Discovery, based on the mistaken assumption that plaintiff's motion was unopposed. Defendant NCUA filed a timely opposition to plaintiff's motion and now moves to vacate my order. Defendants' motion is allowed. On reconsideration, I find that reargument of NCUA's summary judgment motion after more discovery would be fruitless. "Appellants allege that, if they were given the opportunity to engage in discovery, they could uncover facts that would support their claims.... In light of the undisputed facts, we cannot conceive of what discovery would accomplish, except to postpone the inevitable." *Santoni v. Federal Deposit Ins. Corp.,* 677 F.2d 174 (1st Cir. 1982).

Accordingly, defendant NCUA's motion for summary judgment as to all of the counts against it and as to counts one through six of its counterclaim against Savoy is allowed. This court's order of June 5, 1991 is vacated. Plaintiff's Motion for Leave to Amend Opposition to Motion for Summary Judgment Upon Completion of Discovery is denied.

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION

This case arises out of four notes and five mortgages which plaintiff Elaine Sa-

voy executed in exchange for a set of mortgage assignments which eventually failed. Savoy claims to have been a victim of fraudulent inducement in regard to the exchange of commercial paper. Defendant Blue Hill Federal Credit Union has since gone into bankruptcy and the National Credit Union Administration (NCUA) has been substituted as a party. On June 5, 1991, by endorsement, I allowed plaintiff's Motion for Leave to Amend Opposition to Motion for Summary Judgment Upon Completion of Discovery. On January 8, 1992, I vacated that order and granted summary judgment for defendant NCUA on the plaintiff's claims and on six counts of the NCUA's counterclaim. I based my order on the plaintiff's failure to comply with the requirements announced in *D'Oench Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) and its statutory counterpart, 12 U.S.C. § 1787(p)(2). Under that doctrine, any agreement which tends to diminish the financial interest of the federal agency will not be enforced if the agreement is not in writing. Since Savoy's allegations are that Blue Hill had made oral misrepresentations and omissions regarding the nature and value of the exchanges and had orally guaranteed not to foreclose on the mortgages which Savoy executed, I held that the doctrine bars Savoy from recovery against the NCUA. Relying on the same doctrine, I allowed the NCUA's motion for summary judgment on counts one through six[1] of its counterclaim. Counts one through five alleged Savoy's liability on the unpaid notes, as guaranteed by separate instruments which Savoy signed. Count six claimed entitlement to a declaratory judgment that the NCUA has the right to foreclose on the mortgages which secure the amounts due under the notes.

Savoy now moves the court to reconsider its judgment and to vacate the portions of the January 8 order granting summary judgment on counts 1–6 of the NCUA's counterclaims and vacating the June 5 order.

*Discussion*

Savoy continues to beat a dead horse. To the extent that her arguments are a repackaged attempt to avoid the broad sweep of the common law and statutory writing requirement, or to turn her allegations of fraud in the *inducement* into fraud in the *factum*, they fail for the reasons articulated in my January 8 order. She raises two new issues, however.

a. Lack of Consideration

Savoy asserts that there is a material issue of fact as to whether the notes were supported by consideration because she never personally received the proceeds from the loans. Under Massachusetts law, there is no requirement that the proceeds of a loan ever be in the actual possession of the borrower in order for an enforceable debt to arise, so long as the debtor receives some benefit from the loan, even if indirect. *See Federal Deposit Ins. Corp. v. Csongor*, 391 Mass. 737, 464 N.E.2d 942, 945 (1984) (debtor's obligation arose from facially unqualified notes, the proceeds of which were used to satisfy the obligations of third parties). Savoy does not contest the NCUA's assertion that she received the mortgage assignments and she accepted payments which were due under the assignments until they turned sour, nor does she contest that the assignments constituted legally sufficient consideration for the loans.

Moreover, the defense of lack of consideration under the applicable state commercial paper law cannot be used as a challenge to the validity of a note as against the NCUA where the maker has "lent [her]self to a scheme or arrangement" whereby banking authorities would be misled. *D'Oench*, 315 U.S. at 460, 62 S.Ct. at 681; *see Federal Deposit Ins. Corp. v. Caporale*, 931 F.2d 1, 2 (1st Cir. 1991); *Federal Deposit Ins. Corp. v. Bernstein*, 944 F.2d 101, 108 (2d Cir.1991). By being a party to the mortgage assignment

---

1. Count 7 of NCUA's counterclaim, alleging Savoy's violation of M.G.L. c. 93A, was mislabeled as a second "Count 6" in the NCUA's answer and counterclaim. No judgment has been rendered on the c. 93A counterclaim.

transactions, Savoy lent herself to the arrangement whereby the NCUA would be misled into believing that Blue Hill had collectable assets equal to the value of the notes. Even if the defense of lack of consideration applied to the facts of this case, under *D'Oench* Savoy would be estopped from raising it. Consequently, her lack of consideration argument fails.

### b. The September 6, 1988 Note

Savoy raises the issue of whether she has satisfied one of the four notes. She does not directly argue that a note has been paid; rather, she leaves this conclusion to implication and asserts that there is a murky fact pattern which requires inquiry by trial. She produces, for the first time, an unauthenticated copy of a note made by Savoy wherein she borrowed $91,-000 from Blue Hill on September 6, 1988. The upper right corner of the note is marked "PAID 9/22/88." The NCUA points to the fact that Savoy admits to having been in possession of that document since before she filed suit, yet she failed to offer it in opposition to NCUA's motion for summary judgment. The NCUA also asserts that the version of the September 6 note without such an annotation, which the NCUA proffered in support of its counterclaim, is the true copy of the note. In her answer to the NCUA's counterclaim, Savoy admitted both the authenticity of the unannotated version of the note and that she has not paid the amount due under it.

Not only does Savoy's late submission fail to comply with the authentification requirements of Fed.R.Civ.P. 56(e), it is presented to the court after the time for scrutiny of such matters, i.e., on motion for summary judgment. This is not newly discovered evidence for which an exception to the procedural rules would apply. More importantly, however, Savoy's argument appears to be carefully crafted so as to avoid a direct assertion that Savoy has actually paid the note. I agree with the NCUA's characterization that Savoy's submission is disingenuous. If Savoy had actually paid the note she should have simply said so and properly supported the asser-

tion with evidence. Instead, she proffered unauthenticated papers which appear on their face to be material, leaving the meaning of those papers to inference, and made a bare assertion that there are material facts in dispute. Her assertion is not supported and is thus no more convincing than her continued reargument that the *D'Oench* doctrine does not apply to this case.

Accordingly, the plaintiff's two motions to vacate the order of January 8, 1992 are denied. The order is confirmed in its entirety.