Doerfer, J.
The plaintiff, Fleet Bank of Massachusetts, N.A. (“Fleet”), brought this action against the defendants, One-O-Six Realty, Inc. (“One-O-Six”) and Salt Hill, Inc. (“Salt Hill”) for payment on a note which matured on March 28, 1994. Fleet seeks to recover the principle amount on the note, collection fees, default interest and a late fee. Fleet has now moved for summary judgment on its complaint. For the reasons which follow, the plaintiffs motion is allowed in part and denied in part.
BACKGROUND
One-O-Six is the owner of two pieces of real estate, a motel, restaurant, and retail property located at 225 Newbury Street (Route 1), Danvers, Massachusetts (“225 Newbury”) and a Ford automobile dealership and adjacent vacant land located at 106 Sylvan Street, Danvers, Massachusetts (“106 Sylvan”). On April 6, 1988, One-O-Six executed a loan accompanied by a note (the “Note”) with Bank of New England — Essex (“BNE”), Fleet’s predecessor-in-interest, promising to pay a principal amount of $3,200,000 plus interest. The Note was secured by a first mortgage in 225 Newbury and guaranteed by Salt Hill, Inc. The Note was to mature on April 6, 1989. On the same day, One-O-Six also executed another loan for a $500,000 line of credit. The line of credit was secured by a second mortgage on 225 Newbury. By an agreement dated June 5, 1989, BNE and One-O-Six agreed to extend the maturity date of the Loan and the Line of Credit to July 5, 1990. On December 28, 1990, the parties signed a document entitled “Agreement” which restructured the Loan and the Line of Credit as follows: (a) the Line of Credit was paid off; (b) the loan was reduced to approximately $2.4 million; (c) the loan was extended two years to July 5, 1992; (d) One-O-Six began making principal payments of $3,000 per month; and (e) One-O-Six gave BNE additional collateral in the form of an assignment of its car company lease.
By written agreement dated November 19, 1992, Fleet,[1] One-O-Six, and Salt Hill, executed a Third Modification Agreement which again extended the maturity date of the Note to March 28, 1993. By written agreement dated June 7, 1993, Fleet, One-O-Six, and Salt Hill executed a Fourth Modification Agreement further extending the maturity date of the Note to March 28, 1994.
On March 28, 1994, the Note matured and became due. By letters datedApril25,1994 and May 11, 1994, counsel for Fleet demanded payment of all amounts outstanding from One-O-Six and Salt Hill, but as of yet, the defendants have not made any payments to Fleet. On June 23, 1994, Fleet filed this action. On June 29, 1994, the court (Houston, J.) issued a real estate attachment against One-O-Six and Salt Hill in the amount of $2,069,270.64.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
I. Principle
One-O-Six admits that it signed the Note in 1989 and that it received the stated consideration. It is well-established that in Massachusetts, in an action for collection of a debt pursuant to a note, the plaintiff is entitled to judgment upon a showing of an unsatisfied debt underlying the note. Federal Deposit Insurance Corp. v. Csongor, 391 Mass. 737, 740-43 (1984). One-O-Six argues, however, that Fleet’s claims for the principle amount on the note are barred by Fleet’s breach of the covenant of good faith and fair dealing. One-O-Six asserts that Fleet’s requests for increased security and its imposition of higher interest rates prior to granting One-O-Six extensions on the maturity date of the Note were part of an “exit strategy” whereby One-O-Six would be forced to obtain a new lender.
One-O-Six does not dispute, however, that BNE and/or Fleet generously granted four extensions on the maturity date of the Note. If One-O-Six was not pleased with the terms of these extensions, it had from April of 1989, the original date of maturity of the Note, to March of 1994, the date of the last extension, to obtain a new lender. While the defendants contend that there was absolutely no risk or prejudice to Fleet in granting One-O-Six additional time to secure re-financing, Fleet was under no obligation to provide the defendants with any such gratuitous favors. Thus, as is discussed further infra, One-O-Six’s counterclaim alleging breach of the covenant of good faith and fair dealing is not supported in the record and is not a valid defense to payment of the principal amount on the Note. On the record before the court, the defendants have failed to raise genuine issues of material fact regarding Fleet’s prima facie case of an unsatisfied obligation underlying the 1989 Note. Csongor, supra at 740-43. Thus, Fleet is entitled to summary judgment on its claim for the principle amount.
II. Default Interest
Fleet further seeks summary judgment on its claim for default interest. The defendants assert that the default interest, which is 4% over the contract rate, is unenforceable as a penalty because the terms of the *394 Note already provide Fleet with recovery of its reasonable collection costs. The original Note states in relevant part,
At the option of the Holder, upon the occurrence of any event of default hereunder, the rate of interest stated on the fact hereof shall be increased by an additional 4% per year. Said increased rate of interest shall remain in effect for such time as the default continues.
(Ex. A to Complaint.)[2]
The amount of liquidated damages specified in a contract must be reasonably related to the anticipated damages and to the actual loss caused by the breach. Colonial at Lynnfield, Inc. v. Sloan, 870 F.2d 761, 764 (1st Cir. 1991), citing Security Safety Corp. v. Kuznicki, 350 Mass. 157, 158 (1966); A-Z Service Center v. Segall, 334 Mass. 672, 675 (1956); Lynch v. Andrew, 20 Mass.App.Ct. 623, 627 (1985); Restatement (Second) of Contracts §356 (1981). “A provision setting an unreasonably large liquidated damages amount is unenforceable on public policy grounds as a penally.” Sloan, supra at 764 (citations omitted).
Although the defendant’s loan is secured by real estate mortgages and personal guaranties, due to the fluctuating market, there is still an increased risk of non-collection upon the borrower’s default. See In re Gas Reclamation, Inc. Securities Litigation, 741 F.Supp. 1094, 1098 (S.D.N.Y. 1990) (“Under New York law, an agreement to pay an increased interest rate of default is not a penalty, but compensation for the increased risk of non-collection”). Thus, a default interest rate is not prima facie unreasonable. In the Matter of Terry Ltd. Partnership, 27 F.3d 241, 243 (7th Cir. 1994); Travelers Insurance Co. v. Corporex Properties. Inc., 798 F.Supp. 423, 428 (W.D.Ky. 1991); In re Gas Reclamation, Inc. Securities Litigation, supra at 1098. The defendants have not pointed out, nor has the court located, any Massachusetts authority holding that a default interest rate of 4% over the contract rate constitutes an unenforceable “penalty.” Cf. Begelfer v. Najarían, 381 Mass. 177, 186-88 (1980) (where the default interest provision of a note caused the total interest to exceed 20% a year and the lender failed to comply with the requirements of G.L.c. 271, §49, the appropriate remedy was to strike the default provision in the note). Rather, several Federal courts have upheld an increased interest rate of 3-4% in the event of default. See Terry Ltd. Partnership, supra at 244 (3% increase was not unreasonable); Matt, supra at 428 (4.75% increase was not unreasonable); In re Gas Reclamation, Inc. Securities Litigation, supra at 1097. (3% increase was not unreasonable). In the present case, a default interest rate of 4% over the contract rate does not produce a usurious result. Further, the fact that One-O-Six had a “pristine” payment history in no way lessens Fleet’s present risk of collection, especially from a borrower who has, without apparent justification, refused to re-pay. Thus, the court concludes that the imposition of default interest in this case does not constitute an unenforceable “penally.”[3] Fleet is therefore entitled to summary judgment on its claim for default interest.
III. Late Fee
Fleet seeks summary judgment on its claim for a “late fee" in the amount of $105,422.08. The defendants contend that such a fee constitutes a penalty and, thus, is unenforceable. In support of its claim, Fleet relies on the following provision in the original Note:
There shall be a late charge equal to 5.0% of the monthly installment for any installment not paid within fifteen (15) days of its due date.
(Ex. A to Complaint.)[4] In Massachusetts, liquidated damages provisions are unenforceable unless they bear a reasonable relationship to actual damages. Space Master Int’l, Inc. v. City of Worcester, 940 F.2d 16, 17-18 (1st Cir. 1991); Baybank Middlesex v. 1200 Beacon Properties, Inc., 760 F.Supp. 957, 964 (D. Mass. 1991); Begelfer v. Najarian, 381 Mass. 177, 186 (1980). While provisions allowing the lender to recover collection costs and default interest may be found to protect the lender against the risk of non-collection upon default, there is nothing in the record to suggest that a 5% late charge on a multi-million dollar balloon payment at maturity has any relationship to Fleet’s actual damages. Rather, such a charge falls squarely within the sort of “unreasonably large liquidated damages amount which is unenforceable on public policy grounds as a penalty.” Colonial at Lynnfield, Inc. v. Sloan, 870 F.2d 761, 764 (1st Cir. 1989), citing Lynch v. Andrew, 20 Mass.App.Ct. 623, 627 (1985). Enforcing the provision for a late fee, along with the provision for default interest, would serve only as a punitive measure. Thus, the court declares that the late fee provision is unenforceable and Fleet’s motion for summary judgment on that claim is denied.
IV. The Defendants’ Counterclaims
One-O-Six and Salt Hill have asserted counterclaims against Fleet for breach of the covenant of good faith and fair dealing, abuse of process, and violation of G.L.c. 93A, §11. Despite the defendants’ voluminous opposition, the defendants have failed to assert any valid defense to Fleet’s demand for payment on the note. Accepting all of the defendants’ allegations as true, that BNE and/or Fleet demanded excess security and continually increased the interest rate on the Note in an effort to force One-O-Six to obtain re-financing, the defendant’s position is still fundamentally flawed because Fleet was never under any obligation to extend the maturity date at all. On the contrary, the bank would have been within its rights to call in the Note on April 6, 1989, the original date of maturity. Prior to each maturity date, One-O-Six was able to obtain re-financing on more favorable terms if it so chose. Further, One-O-Six’s contention that Fleet should have provided it with more time to obtain re-financing *395 is nonsensical in light of the number of extensions Fleet granted One-O-Six. From the record before it, the court concludes that Fleet had no duly to abstain from aggressively pursuing the re-payment of its loan after the Note matured pursuant to the Fourth Modification Agreement. Thus, the defendants’ counterclaims are without merit and summary judgment is therefore appropriate in Fleet’s favor.
ORDER
For the foregoing reasons, the Plaintiff Fleet Bank of Massachusetts, N.A.’s Motion for Summary Judgment is ALLOWED as to the principle amount of the loan, reasonable costs of collection, and default interest. The Plaintiff Fleet Bank of Massachusetts, N.A.’s Motion for Summary Judgment is DENIED as to the late fee. It is hereby ORDERED and DECLARED that the late fee constitutes an unenforceable penalty. The Plaintiff Fleet Bank of Massachusetts, N.A.’s Motion for Summary Judgment on the Defendants One-O-Six Realty, Inc. and Salt Hill, Inc.’s Counterclaims is ALLOWED. As set forth in the loan documents and the Plaintiffs affidavits, the Plaintiff Fleet Bank of Massachusetts, N.A. is entitled to $2,005,914.73, the current outstanding principal balance due and owing on Fleet’s loan to One-O-Six plus $43,704.76 in interest.* The matter is to be scheduled for an assessment of damages in regard to the attorneys fees and the costs of collection.
Upon further review of the affidavits presented by Fleet Bank of Massachusetts, N.A.’s (“Fleet”), the court amends its Order, dated January 17, 1995, only in regard to the proper amount of interest to which Fleet is entitled. The total amount of default interest due and owing Fleet is $152,943.53, which reflects the sum of the contract rate of $106,138.85 plus the additional four points of $46,804.68.

Editor’s Note: By an order entered on January 31, 1995, the court amended this order as follows:

 Fleet had succeeded to the interests of BNE.

This provision was modified somewhat during the restructuring and subsequent extension. The December 28, 1990 restructuring agreement states:
In the event of a default by the Borrower in the $3,200,000.00 Note or in the event that unpaid principal, interest and other costs and expenses due to the Bank are not paid in full at maturity, then the rate of interest on the unpaid principal shall increase to the aggregate of the Bank’s Base Rate for commercial loans in effect from time to time plus four (4.00%) percent floating and such rate shall continue during any period that the loan remains in default.
(Ex. C to Complaint.) The November 19, 1992 and June 7, 1993 extension agreements both state:
In the Event of Default (as defined previously in the Note or hereinafter), without notice or demand, the same being expressly waived, the aggregate per annum interest rate shall become four (4.00%) percent plus the then Contract Rate of interest until such Event of Default is cured or waived.
(Ex. D and Ex. F to Complaint.)

Peter D. Leahy’s statement in his deposition that the default interest was, in his opinion, a “penally” is not dispositive of the matter.

This provision was modified somewhat during the restructuring and subsequent extensions. The December 28, 1990 restructuring Agreement states:
In the event that any payment under the $3,200,000.00 Note is not paid within fifteen (15) days of its due date, there shall be a late charge equal to one and one half (1.50%) percent of the monthly installment for any installment not paid in said fifteen (15) day period.
(Ex. C to Complaint.) The November 19, 1992 and June 7, 1993 extension agreements both state:
The Borrower shall pay a late charge equal to five percent (5.00%) of any amount not paid within ten (10) days of the due date thereof.
(Ex. D and Ex. E to Complaint.)